———————o-o-•———————

## MORGAN *vs.* QUACKENBUSH and others.

An injunction can be granted only when it appears *by the complaint* that the plaintiff is entitled to the relief demanded. There must therefore be a complaint, upon which to found a motion for an injunction.

But if the motion is made upon an *affidavit* which contains all the requisites of a complaint, as prescribed in the 142d section of the code, that is sufficient.

On the 16th of January, 1855, the plaintiff was duly appointed chief of police of the city of Albany. A charter election for that city was held on the 2d Tuesday of April, 1856, for the election, among other officers, of a mayor, to hold his office for two years, to commence on the first Tuesday of May thereafter, at which P. and Q. were candidates for that office. At its next meeting after the election, viz. on the 14th and 15th days of April, the common council proceeded to canvass the inspectors' return of votes, and to determine and declare who was elected to the office of mayor; and they determined and declared, that P. had received the greatest number of votes, and was duly elected mayor, and made and filed a certificate of that determination. On the 6th

Morgan *v.* Quackenbush.

of May, when the term of office commenced, P. having taken and subscribed the oath, entered upon the discharge of the duties of the office. On the same day, the new common council proceeded to re-canvass the votes for mayor, and, upon such canvass it was determined and declared that Q. was duly elected mayor, and a certificate of that determination was made and filed. On the 12th of May the new common council appointed a large number of persons to be members of the police department, in the place of others whose term of office was about to expire. Among others W. was appointed policeman. The officers so appointed refused to take the oath of office before the mayor, as required by law. W. preferred charges against the plaintiff, as chief of police, to Q. as mayor, and Q., assuming to act as mayor, received and entertained the charges, and with the recorder and one of the aldermen of the city, was proceeding to hear the charges against the plaintiff. The grounds of the charges were that the plaintiff had refused to recognize as police officers the persons appointed by the new common council, until they should take the requisite oath of office before P. as mayor. On an application for an injunction to restrain Q. and the recorder and alderman, from hearing or trying the charges, or making any decision thereon, until the right of Q. to act as mayor should be determined;

*Held* 1. That the duty of the common council, in making the first canvass, was purely ministerial, and consisted in a simple matter of arithmetic; they not being at liberty to receive evidence of any thing outside of the returns of the inspectors. That in receiving affidavits tending to show fraudulent practices at the polls, and in omitting to canvass the votes of two election districts, on that ground, they acted illegally, and assumed to exercise a judicial power which the legislature had not vested in them. But that, having jurisdiction to make the canvass, their certificate entitled P. to the office until the error should be corrected by legal proceedings.

2. That the old common council having canvassed the returns, and declared the result, however illegally they might have acted, their power over the subject, as canvassers was spent, and the action of the new common council, in attempting to re-canvass the returns, on the 6th of May, and to determine and declare who was elected mayor, was unauthorized and void; they having no power to revise the action and correct the errors of their predecessors.

3. That the determination of the first board in favor of P. however erroneous it might be, had furnished him with *prima facie* evidence of his election; and that, having acted upon that evidence, qualified, and entered upon the discharge of the duties of the office, he became mayor *de facto*, and could not be displaced, except by an action brought for that purpose by some person claiming to be entitled to the office. And that P. being mayor *de facto*, Q. whatever his right, could not be mayor in fact at the same time, and did not derive even a *colorable* title to the office, from the determination of the second board of canvassers.

4. That the defendants were not authorized to proceed with the trial of the plaintiff upon the charges preferred against him, as chief of police, Q. having no

Morgan *v.* Quackenbush.

jurisdiction to receive charges against the plaintiff, or to officiate as a member of the tribunal organized for his trial.

5. That the new policemen had been duly appointed, and whether they had taken any oath or not they were entitled to act. That the plaintiff had no right to inquire whether, and before whom, they had taken their official oath, but should have recognized them, and organized the police; and that his refusal to do so was erroneous.

6. That the plaintiff having voluntarily thrust himself into the controversy, between the claimants for the office, he was not entitled to an injunction to restrain the proceedings of the defendants, however illegal.

MOTION for injunction. Upon the hearing of the motion, it was shown by affidavit on the part of the plaintiff, that on the 16th of January, 1855, the plaintiff was duly appointed chief of police in the police department of the city of Albany for the term of three years, and that he entered upon, and has ever since continued to dicharge the duties of the office ; that a charter election for said city was held on the second Tuesday of April, 1856, for the election among other officers, of a mayor, to hold his office for two years, to commence on the first Tuesday of May thereafter ; that at such election Eli Perry and the defendant Quackenbush were candidates for such office; that the common council of the city, at its next meeting after the election, proceeded to canvass the inspectors' returns of votes, and to determine and declare who had been and was elected to the office of mayor; and that at such meeting, which was held on the 14th and 15th days of April, the common council did determine and declare, as the result of such election, that Eli Perry had received the greatest number of votes for the office of mayor, and was duly elected to that office ; that a certificate of such determination was made by the common council, and signed by a majority of its members and filed with the city clerk ; that the common council then adjourned to meet again on the 28th of April, at which time it met and transacted business, and again adjourned to the 5th of May, when it met and adjourned without day ; that on the 6th of May, the day on which the term of office commenced, Mr. Perry, having taken and subscribed the oath prescribed, entered upon the discharge

of the duties of the office, and has ever since continued to discharge such duties.

It further appeared that on the 12th day of May, the new common council appointed a large number of persons to be members of the police department, in the place of others whose term of office was about to expire, and among others, John Wiley was appointed to the office of policeman; that the officers so appointed refused to take the oath of office before the mayor as required by law, and the plaintiff insists that, for this reason, they have not qualified themselves to enter upon and discharge the duties of the offices to which they have been appointed.

It was further shown that the defendant Quackenbush claimed that he was elected mayor and was entitled to discharge the duties of the office, and that John Wiley, who had been appointed policeman, had preferred charges against the plaintiff as chief of police, to the defendant Quackenbush as mayor, and that he, assuming to act as mayor, had received and entertained the charges, and with the other defendants, William S. Paddock and George B. Johnson, the recorder and one of the aldermen of the city, was proceeding to hear the charges against the plaintiff and inquire into the truth thereof; that the grounds of the charges preferred against the plaintiff were that he had refused to recognize as police officers the persons appointed by the new common council until they should take the requisite oath of office before Mr. Perry as mayor of the city.

Upon these facts the plaintiff asked that the defendant might be restrained by injunction from hearing or trying the charges preferred against him, or making any decision thereon, until the right of the defendant Quackenbush to act as mayor should be determined.

In opposition to the motion, it was shown that it appears from the inspectors' returns on file, that the whole number of votes received by the defendant Quackenbush for the office of mayor was 3332, and the whole number received by Mr. Perry was 3309; and that the new common council on the 6th of May proceeded to re-canvass the votes for mayor, and, upon such can-

vass it was determined and declared that the defendant Quacken-
bush, having received the greatest number of votes, was duly
elected mayor, and they proceeded to make and file a certifi-
cate of such determination. It also appeared by the certificate
of the first canvass, which was produced upon the hearing, that
the number of votes allowed to the defendant Quackenbush,
upon the canvass, was only 2172; and the number of votes
allowed to Mr. Perry was 2990.

*L. Tremain* and *W. J. Hadley*, for the plaintiff.

*A. J. Parker* and *C. Cassidy*, for the defendant.

HARRIS, J. An objection was taken upon the hearing, which
I was at first inclined to think fatal to this application. The
action was commenced, as was stated, by the service of a sum-
mons, without complaint, and the motion is founded upon an affi-
davit. An injunction can only be granted when it appears
*by the complaint* that the plaintiff is entitled to the relief de-
manded, and such relief, or any part thereof, consists in restrain-
ing the commission or continuance of some act, the commission
or continuance of which, during the litigation, would produce
injury to the plaintiff. The objection is that there being *no
complaint*, it cannot appear *by the complaint* that the plaintiff
is entitled to the relief demanded. This is obviously so, but, on
looking into the paper called *an affidavit.* I find that it contains all
the requisites of a complaint. The ingredients of a complaint,
as they are prescribed in the 142d section of the code, are all
there. It contains the title of the cause; it specifies the
name of the court, and the county where the plaintiff proposes to
try the action, and the names of the parties. It then states the
facts upon which the plaintiff relies to constitute his cause of ac-
tion, and demands the relief to which the plaintiff supposes him-
self entitled. This makes a complaint. It is true, that instead
of commencing in the form usually adopted in a complaint, it com-
mences in form as a deposition. But, if the paper contains, as
this does, every thing essential to constitute a complaint, the

Morgan *v.* Quackenbush.

form in which it is presented furnishes no sufficient ground of objection. I proceed, therefore, to the examination of the case upon the merits.

The inspectors of an election for charter and ward officers in the city of Albany are required, upon the completion of the canvass, to certify and declare the result, stating the number of votes given for each person for each respective office, and to file their statement and certificate in the office of the clerk of the common council within twenty-four hours. Their office is purely *ministerial.* They decide nothing. They merely declare the contents of the ballot-box. The next canvass is to be made by the common council. The statute declares that " at its meeting thereafter," the common council shall canvass *such returns*, and determine and declare the result. (*Sess. Laws of* 1851, *p.* 106, § 11.) The time of making this canvass is not fixed. The words " at its meeting thereafter" are entirely nugatory. It is probable that the legislature intended to declare, as it had been provided in previous statutes, that the canvass should take place at the first meeting of the common council after the election. But if so, the word " next" has been carelessly omitted in the sentence, and thus its effect is wholly destroyed. All that is now required is, that the common council shall canvass the returns and determine and declare the result. This, too, is a ministerial act. The common council are judges of nothing. They are not at liberty to receive evidence of any thing *outside* of the returns themselves. Their duty consists in a simple matter of *arithmetic.* They are to bring together the returns made by the inspectors of the several election districts, and ascertain, by computation, the aggregate number of votes given in the whole city for each person, for each office, and then declare the result by their certificate. If, in the first canvass, the common council received affidavits tending to show fraudulent practices at the polls, as it is well known they did, although the fact is not before me upon the motion, and, acting upon such evidence, omitted to canvass the votes of two election districts, they acted illegally. In doing so, they assumed to exercise a judicial power which the legislature has

never vested in them, *or any other board of canvassers.* All that appears upon that subject, on this motion, is, that while the returns of the inspectors show the aggregate number of votes for the defendant, Quackenbush, to be 3332, the canvass allows him but 2172; and while the aggregate number of votes for Mr. Perry, according to the returns, is 3309, the canvass allows him but 2990. But the common council did, on the 15th of April, assume the duty of canvassing the votes, and did determine and declare the result. Such determination was *prima facie* evidence that the person declared to be elected was entitled to the office. Assume that they transcended their authority, as they undoubtedly did, in rejecting a portion of the returns, could such illegal act justify the same body, when subsequently convened, in disregarding the first canvass altogether, and proceeding to canvass the votes anew? I think not.

When the returns of the inspectors had been canvassed and the result declared, however illegally the common council may have acted, their power over the subject as canvassers was spent. They had no right to re-convene themselves as a board of canvassers, and assume the duty of determining anew the result of the election. As well might the common council who may be in office on the first Tuesday of May, 1857, take it upon themselves to revise the proceedings of the 6th May, 1856, and declare some other person elected to the office of mayor. It was a re-canvassing of the returns, and this was a thing the legislature had not authorized them to do. It was an attempt of the new board to revise the action and correct the errors of their predecessors, and this is not among the powers with which they were clothed by the legislature. It seems to me very clear, therefore, that the action of the common council in attempting to re-canvass the votes for mayor on the 6th of May, and to determine and declare who was elected to that office, was entirely unauthorized and void. Both boards have erred, perhaps equally—the first, in going beyond the returns of the inspectors, and constituting itself a judge of the validity of the proceedings at the election; the second, in undertaking to correct the error of the first, by re-canvassing the votes.

The next inquiry relates to the effect of these proceedings upon the parties claiming the office. The first board did canvass the votes, illegally though it may be. They did determine and declare the result. That determination, however erroneously, has furnished to Mr. Perry *prima facie* evidence of his election. He had a right to act upon that evidence and take possession of the office. Having qualified and entered upon the discharge of its duties, he became mayor *de facto.* He cannot, in my judgment, be displaced except by an action brought in the manner prescribed by law for that purpose, by some other person claiming to be entitled to the office. The law on this subject is distinctly declared by the court of appeals in *The People* v. *Cook,* (4 *Seld.* 67.) The title to an elective office is derived from the people through the ballot-box. Somebody must declare what is the will of the electors, as thus expressed. Canvassers are provided for that purpose. The certificate of a board of canvassers is evidence of the person upon whom the office has been conferred. Upon all questions arising collaterally, or between the party holding the certificate and a stranger, it is *conclusive* evidence. But in a proceeding to try the right to the office, it is only *prima facie* evidence. In such a proceeding, now regarded as a civil action, it is competent for the court to go behind the adjudication of the canvassers. The whole question is thrown open, and extrinsic evidence is allowed to show what was the true state of the votes. In such an action, where the right to the office is the very thing in issue, the court will allow nothing to stand in the way between it and the ballot-box. It will put in requisition all the means within its reach to ascertain the expressed will of the electors, and will conform its judgment to such ascertained will.

Again; the common council having as a board of canvassers, declared Mr. Perry elected to the office, and their decision, however erroneous, remaining unreversed, what evidence has the defendant Quackenbush, however rightfully he may deem the office to belong to him, even of a *color* of right? Unless the returns of the inspectors can be successfully attacked, in

an action to try the right to the office, he must succeed in such an action. But if, as I have attempted to show, the re-canvassing of the returns by the new board furnished no more evidence of his right to the office than the certificate of any other equal number of respectable men, there is no determination upon which he can rely to give him even *the color* of right. Indeed, I do not understand that two persons *can be* in possession of the same office at the same time. If the certificate of the canvassers declaring Mr. Perry elected, vested him with *colorable* title to the office, as I think it did, so that he had a right to enter upon the discharge of its duties, another effect of that decision was, to exclude the defendant Quackenbush, as well as everybody else, from the office.

They could not hold as tenants in common—each having a legal right to perform it functions. If Mr. Perry became mayor *de facto*, the defendant Quackenbush, whatever his right, could not be mayor in fact, at the same time. The attempt to effect this by the second canvass, tended to disorganization and has resulted in confusion. The city, in its municipal government, presents the unseemly deformity of a body with two heads, each head claiming to possess vitality and the right to control and regulate the functions of the body. This state of things, detrimental as it obviously is, to the interests of the community, is the immediate result of the unwarrantable attempt of the new board to correct, in a summary and illegal manner, the gross error of their predecessors. Had the controversy been promptly introduced before a legal tribunal, it is quite probable that, even before this time, a determination might have been had, according to the very right of the case.

Unless I have entirely misapprehended the principles applicable to the case, it follows from what has already been said, that the defendants are not authorized to proceed with the trial of the plaintiff upon the charges preferred against him, as chief of police. The mayor alone is authorized to receive complaints against that officer. He is a necessary constituent in the tribunal to be organized for the trial. If, as I have endeavored to show, Mr. Perry is actually in possession of the office, and it cannot legal-

Morgan *v.* Quackenbush.

ly have two incumbents at the same time, Dr. Quackenbush has no jurisdiction to receive charges against the plaintiff, or to officiate as a member of the tribunal organized for his trial.

But because the proceedings of which the plaintiff complains are clearly illegal, it by no means follows that the plaintiff is entitled to an injunction to restrain those proceedings. In the view I have taken of this branch of the case, I have not deemed it important to inquire as to the power of the court to award an injunction. Conceding the power, I am satisfied that this is not a proper case for its exercise.

The policemen appointed by the new board presented themselves to the plaintiff for duty, with the legal evidence of their appointment. They had, in fact, been duly appointed, and whether they had taken any oath or not, they were entitled to act. The plaintiff stepped widely aside from his duty, when he permitted himself to inquire whether and before whom these officers had taken the oath required by the constitution. It constituted no part of his official duty. It was enough for him to know that they came to him bearing the warrant of their appointment by the proper authority. To refuse to recognize them, and organize the police, was an act mischievous and revolutionary in its character, and in no condition of things to be justified or upheld. The plaintiff seems voluntarily to have thrust himself into the controversy between the claimants for the office. Under such circumstances, he ought not to expect the extraordinary interposition of the court to protect him from apprehended injury.

I have thus discussed the various questions presented by the counsel for the parties upon the argument of this motion. I have stated honestly and frankly the convictions of my own judgment. For both the gentlemen claiming the office, I entertain high respect. Both are well qualified to discharge efficiently its duties. The welfare of the city demands that this unprofitable, and I think I may safely add, discreditable controversy should be speedily terminated. I shall be happy indeed if, in any way, this discussion shall tend to that result.

The motion for an injunction must be denied.

[RENSSELAER SPECIAL TERM, June 2, 1856. *Harris*, Justice.]