STATE, FRANK A. KENDELL, PROSECUTOR, v. THE CITY COUNCIL OF THE CITY OF CAMDEN.

1. The common council of a city, made by the charter the sole judge of the election and qualifications of its own members, having once in-vestigated and seated a member, cannot, at a subsequent meeting, order a second investigation.
2. A resolution appointing a committee to make such investigation may be reviewed by *certiorari* without waiting for the report and final order.

On *certiorari* to the city council of Camden, to review the protest, resolution and proceedings of said council concerning the trial for removal of the prosecutor from his office of city councilman for the First ward of the city of Camden.

The minutes of council and depositions show that at the municipal election held March 12th, 1883, the prosecutor, Frank A. Kendell, and Daniel R. Smith were opposing can-didates for the office of councilman. The returns of the elec-tion were that Kendell had a majority of two votes. The minutes of March 16th, 1883, contain the entry that "the newly-elected members of the city council then came forward and were sworn in by the clerk: the First ward, Frank A.

Kendell," &c. It also appears that Daniel R. Smith's petition and notice to contest the seat of Kendell were presented, asking for a recount of the ballots in the First ward. They were referred to a committee of five members, and on April 12th a majority reported that Frank A. Kendell was legally entitled to his seat in the city council. This report was not accepted because it stated that the contestant and minority members of the committee did not appear at the time fixed for investigation, but it was referred back to the committee. Their next report was made April 26th, 1883. It contains the statement that "the chairman asked Mr. Smith on what ground he asked that the ballots be recounted, and he, Smith, said that as Mr. Kendell was declared elected by only two votes, and one of them he did not think he was entitled to receive, there might be an error in tallying, and if the ballots were recounted it might prove that he was elected instead of Mr. Kendell. He had no charge to make of unfairness so far as the election was concerned. Your committee did not think that the statement of Mr. Smith was sufficient to show that Mr. Kendell was not elected, and therefore declined to recount the ballots." This report was adopted by the council, and Mr. Kendell has retained his seat. The term is three years. At the March election, 1884, one new member for each of the eight wards of Camden, and one at large, were elected, making nine new councilmen, and at their meeting March 14th, 1884, notice of contest of Kendell's seat was again given by Daniel R. Smith, and a committee of five was then appointed to investigate the petitioner's claim to the seat. March 20th, 1884, this writ of *certiorari* was served on the city council, and nothing has since been done on the petition.

Argued at November Term, 1884, before Justices DEPUE and SCUDDER.

For the prosecutor, *C. T. Reed.*

For the defendants, *J. Willard Morgan.*

The opinion of the court was delivered by

SCUDDER, J.  By the charter of the city of Camden, (*Pamph. L.* 1871, *p.* 224, § 26,) the city council "shall be the sole judge of the election returns and qualifications of its own members, and keep a journal of its own proceedings." This section constitutes the council both a board of canvassers to inspect the returns of the election boards, and also a tribunal that, on a sufficient showing of probable fraud or irregularity, may order a recount of votes, hear evidence applicable to the points in dispute, and determine who is entitled to be seated as a member. *State* v. *Rahway,* 4 *Vroom* 111.

But this council, like all other special statutory tribunals, is subject to the supervisory jurisdiction of this court when it departs from or exceeds the express terms of the power given in the charter. It was a mistake made in the argument of counsel when he claimed the same exclusive authority for a city council having a charter like this as that exercised by congress or the legislatures of our states. They are co-ordinate branches of the government under the constitution, and cannot be controlled by the judiciary in the discharge of their appropriate functions. The constitution has divided the powers of government into distinct departments, and cautiously provided for their independent exercise. It has expressly forbidden any person belonging to or constituting one of these departments from exercising any of the powers properly belonging to either of the others, except as expressly provided in the constitution itself. These are the words of the court in *State* v. *Governor,* 1 *Dutcher* 331. But municipal bodies have only such powers as are given them by the legislature, and in the exercise of these have not the independent authority to act without control by the court which belongs to the legislative branch of state government. How far they will be controlled in the exercise of this particular power given to a common council to judge of the election and qualification of its members, it is said, depends on the exact language in which the provision is couched, viewed in the light of the general laws of the state on the subjects of contested elections and *quo war-*

*ranto.* 1 *Dillon Mun. Corp.,* § 202. It may constitute a cumulative or primary tribunal merely, or it may have the provision that council shall have the sole or final power of deciding elections. But whatever may be the extent or limitation of the authority given, it is the province of this court to see that no arbitrary act is done, under the guise of legislative sanction, to deprive citizens of their right of representation, or to unseat a candidate who, by the proper and final tribunal, has been adjudged to be duly elected. Giving, therefore, to these words of the charter all that is claimed for them, that they constitute the council the sole and final judge of this election, the question, beyond that, presented in this case is whether, having once decided that a member has been regularly elected, under the ordinary proceedings for trying this issue, the common council of Camden may again put him on trial, not only once, but as often as changes occur in the membership which will render it easy, by personal or partisan preference, to substitute his opponent. It may be that in this case, as appears by the depositions of the contestant and of the two minority members of the committee, that he was refused a recounting of the ballots by the action of a majority of the committee, and that this was caused by their political hostility, but the committee reported to the council that in their judgment he showed no good cause for a recounting, and, after hearing, the report was accepted, and Kendell was seated and adjudged to be elected.

It is still further insisted that, admitting the power of council thus to act, it was subject to the right of reconsideration, and that, like all deliberative assemblies, the common council had this right. The case of *State* v. *Foster,* 2 *Halst.* 101, cited as an authority for this position, sufficiently illustrates it. In joint meeting of the legislature, on a vote for a clerk of the Court of Common Pleas, one candidate had a majority of the ballots cast; before the result was announced, another balloting was ordered by the joint meeting, with a different result, electing another person. It was, on *quo warranto,* decided that the meeting had the right to reconsider as often

as they thought proper, during the session, and it was the re-- sult only that would be considered as their final action. In *Lantz* v. *Hightstown*, 17 *Vroom* 102, 107, it was said that a common council cannot review its action, in granting a license,. at a subsequent meeting, where there is no reconsideration of that action during the session, on the ground that there was error in law or fact, unless the power of revocation is con- ferred by the legislature. In the present case the common council took no proceedings to reconsider or change their action until a year after their decision had been given ; and when nine new members were introduced, with the hope of a better result the former contestant renewed his protest. The impolicy of permitting such efforts to unseat members of a municipal body when the election of new members makes it feasable because of the increased bitterness of partisan strife and personal feeling that must be excited, makes it desirable that some remedy shall be found, if possible, to prevent them. It does not seem to me to be difficult in this case to indicate the remedy and the reasons for it. The resolution of the council, appointing a committee to investigate again the right of the present incumbent, Kendell, to his seat, is not a mere attempt at reconsideration, by a legislative body, of its own action, but it is, in effect, an appeal to another tribunal com- posed of different members. The true construction of the clause in the charter making the common council the sole judge of the election and qualifications of its members does not call for such appeal, but makes the one adjudication final as to themselves and to their successors in office. In *Hadley* v. *Mayor, &c., of Albany*, 33 *N: Y.* 603, the common council having canvassed the returns and determined and declared the result in an election of mayor of the city, and made another canvass at a subsequent day with a different result, the court said that, having once legally performed the duty imposed, the power of the council was exhausted, and they had no right to reverse their former decision by making a different deter- mination. A like ruling is found in *Morgan* v. *Quackenbush*, 22 *Barb.* 72, 78. Whether acting as canvassers of returns or

as a special tribunal to examine the whole subject of the election by going behind the returns and determining who has been legally elected by the ballots cast, a common council, having once examined and decided the question, can take no step further to reverse its action at a subsequent meeting, and certainly not when, after the lapse of a year, new members have been brought in to change its form and opinion.

However worthy of condemnation the action of the former council may have been in refusing the recount, if good cause were shown—and there does appear to be some ground for suspecting that they were actuated by prejudice rather than a fair judgment—there is no power found in the charter to review and correct their determination.  The resolution passed March 14th, 1884, appointing a committee to investigate the former contestant's petition and claim to the seat of the prosecutor in council is *ultra vires* and void.  It necessarily subjects the incumbent to loss and expense in preparing his defence, and not to a mere contingent injury depending on the result of the investigation.  It is an oppressive act, attempted by a municipal body, beyond its corporate power, involving pecuniary loss to the prosecutor, and he need not wait, therefore, until there is a final order or judgment in the case, but may stop it at its inception by a writ of *certiorari*.

The resolution and all proceedings under it are set aside, without costs.