[No. 19368. Department One. December 22, 1925.]

C. E. CAROTHERS, *Appellant*, v. E. E. BROWN *et al.*,
*Respondents.*[1]

[1] MUNICIPAL CORPORATIONS (33)—PROCEEDINGS OF COUNCIL—DETERMINATION OF QUALIFICATIONS OF MEMBERS—REVIEW. Under Rem. Comp. Stat., § 9126, providing that the city council shall judge the qualifications of its members, its induction into office of two councilmen, one for a four-year term and the other for a two-year term, although elected without designation of their terms, will not be inquired into by the courts, unless the action was arbitrary, capricious and in defiance of rights.

[2] SAME (33) — DETERMINATION OF QUALIFICATIONS OF MEMBERS — POWER TO CHANGE. After a city council has determined the terms of office for which two of its members were elected, and inducted them into office for specified terms, which were accepted without protest, its power is exhausted, and the action final.

[3] SAME (33)—DETERMINATION OF QUALIFICATIONS OF MEMBERS—REVIEW BY COURTS. Where the action of a city council in designating the terms for which two of its members were elected and inducted into office was acquiesced in for two years without challenge or objection, the action of a subsequent council in reversing the decision and changing the terms will be set aside by the courts as arbitrary, capricious and unlawful.

¹Reported in 241 Pac. 680.

CAROTHERS v. BROWN.

Appeal from a judgment of the superior court for Cowlitz county, Kirby, J., entered April 30, 1925, upon findings in favor of the defendants, in *quo warranto* to try title to office. Reversed.

*Chas. E. McAvoy* and *John T. Casey,* for appellant. *J. E. Stone,* for respondents.

Askren, J.—This is an action in *quo warranto,* to obtain a councilmanic seat in the city of Kelso. The facts are:

Respondent Brown and appellant Carothers were elected councilmen for the first ward of Kelso, in December, 1922. At that time, there were two terms to be filled, one for four and one for two years, but there was no designation on the ballots of any specific term for which either was a candidate. They were duly declared elected by the canvassing board. Following the election, they were inducted into office at a meeting of the city council at which they qualified as councilmen, Carothers qualifying for the four-year term, and respondent Brown qualifying for the two-year term, according to the minutes of the meeting, which are as follows:

"The following citizens, elected to act as city officials during the years 1923 and 1924, at the December general election were sworn into office as follows:

"E. E. Brown, councilman First Ward, 2 years.

"C. E. Carothers, councilman First Ward, 4 years."

Then follows a list of all other councilmen, city treasurer, city clerk, city attorney and mayor, and their terms of office.

"After some discussion as to future problems and work to be accomplished, the council, by motion of Brown-McKenney, adjourned this meeting to 8:00 p. m., January 16th, 1923.

"M. J. Lord, City Clerk."

Appellant and respondent held their respective offices until the meeting of the city council on January 6, 1925. At the December election, 1924, one Graham was elected as councilman for the first ward for the term of four years; and when he was to be inducted into office, the question was raised whether he succeeded Brown, who, we have seen by the minutes of the council in 1923, had taken the two-year term, or the office of Carothers, who had been designated for the four-year term. The city council proceeding to vote upon the matter, reversed the action of the council of January, 1923, and declared respondent Brown to be the incumbent for the four-year term, and Carothers for the two-year term, and that the newly elected councilman Graham should succeed Carothers.

This action was instituted in the superior court to determine the right to the office, and after a hearing the court found substantially the facts we have stated, but held that, as a matter of law, there was no legal election in 1923, because no designation had been made on the ballots as to which term the candidates were running for, and decided that respondent Brown succeeded himself as councilman for four years.

[1] In this we think the court was in error. The city council has the right, under § 9126, Rem. Comp. Stat., to judge of the qualifications of its members and of all election returns, and to determine contested elections of all such officers. We think, it is the rule, under our decisions, that the court will not inquire into the council's decisions upon these matters, excepting where they have been arbitrary, capricious, and in defiance of the rights of those interested.

When respondent and appellant were inducted into office in January, 1923, it became the duty of the city council to determine their respective terms. This it did, holding that respondent was entitled to the two-

year term, and appellant the four-year term. Having
once decided this matter, its authority to again deter-
mine it was exhausted. For two years each of the
parties to this action held office under the term as-
signed to him by the council. Both of them were
satisfied with the council's action. No taxpayer or
voter protested the right of the city council to make
the assignment, or challenged the justice of its decision.

[2] The question then is, can the city council two
years later reconsider the action of the former council,
and make a different finding? We think not. To al-
low such a proceeding would be to permit the rights
of members of the council to be inquired into and
jeopardized at every meeting thereof, and would place
the rights of its members subject to the changing
political complexion of the council from year to year.
Our determination of this question is reinforced by the
very able decision in *Kendell v. Camden*, 47 N. J. Law.
64, 54 Am. Rep. 117. In that case, the charter of the
city of Camden provided much the same as our statute
with regard to the city council being the judge of the
election returns and qualifications of its members. The
question was raised as to the right of the council,
having once investigated and seated one of its members,
to again reopen it and unseat him. Part of that opinion
is so clearly applicable to the present case that we
quote therefrom:

"In the present case the common council took no
proceedings to reconsider or change their action until
a year after their decision had been given; and when
nine new members were introduced, with the hope of
a better result, the former contestant renewed his
protest. The impolicy of permitting such efforts to
unseat members of a municipal body when the election
of new members makes it feasible, because of the
increased bitterness of partisan strife and personal
feeling, that must be excited, makes it desirable that

some remedy shall be found, if possible, to prevent them. It does not seem to me to be difficult in this case to indicate the remedy and the reasons for it. The resolution of the council, appointing a committee to investigate again the right of the present incumbent, Kendell, to his seat is not a mere attempt at reconsideration, by a legislative body, of its own action, but it is in effect an appeal to another tribunal composed of different members. The true construction of the clause in the charter making the common council the sole judge of the election and qualifications of its members does not call for such appeal, but makes the one adjudication final as to themselves and to their successors in office. In *Hadley v. Mayor, etc., of Albany,* 33 N. Y. 603, the common council having canvassed the returns and determined and declared the result in an election of mayor of the city, and made another canvass at a subsequent day with a different result, the court said, that having once legally performed the duty imposed, the power of the council was exhausted, and they had no right to reverse their former decision by making a different determination. A like ruling is found in *Morgan v. Quackenbush,* 22 Barb. 72, 78. Whether acting as canvassers of returns or as a special tribunal to examine the whole subject of the election by going behind the returns and determining who has been legally elected by the ballots cast, a common council, having once examined and decided the question, can take no step further to reverse its action at a subsequent meeting, and certainly not when after the lapse of a year, new members have been brought in to change its form and opinion."

[3] It is apparent that the action of the council in 1925 in unseating appellant was unlawful, arbitrary and capricious, and that courts have power to set it aside. It is not necessary for us to determine whether the court would have taken jurisdiction in a proceeding to challenge the original action of the council in determining the terms of the respondent and appellant, for no action was brought, and as has already been

stated, all the parties acquiesced therein for a period of two years.

We think it follows that the superior court was in error in upholding the last action of the council, and the judgment is reversed, with instructions to declare appellant elected to the four-year term, as found by the city council in January, 1923.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MACKINTOSH, JJ., concur.