ALBANY, Oct. 1827.
The People ex rel Yates v. Ferguson.

---

### THE PEOPLE, *ex. rel.* YATES, *against* FERGUSON.

On an issue to try whether one was elected Co. Clerk, whose name, at length was Henry F. Yates; held, that votes for H. F. Yates were allowable, if, under all the circumstances, the jury should believe that they were intended by the voters for Henry F. Yates; e. g. that he often subscribed his name H. F. Yates; that he had formerly been clerk, and was a candidate when the disputed votes were given; that people [*103] would generally apply to him; and that no other person was known in the county where he was a candidate to whom it would apply.

So the elector who gave the abbreviated vote may be sworn as to the person intended.

A certificate of town inspectors was, that 212 votes were given for Y. for the office of county clerk, 30 votes for D. &c., and 116 for F., each for the same office; held, that F.'s votes were well certified for him as a candidate for county clerk; and should be allowed.

A witness is never holden incompetent, merely on the ground that the fact he is called to prove is of such a nature that he cannot be convicted of perjury, should he swear falsely.

INFORMATION in nature of a *quo warranto,* to try whether the relator, or the defendant, was duly elected county clerk of the county of Montgomery, at the annual election in November, 1825; tried at the circuit in that county in May, 1827, before WALWORTH, C. Judge.

At the trial, the defendant gave in evidence the certificate of the county canvassers, dated November 16th, 1825; by which it appeared that George D. Ferguson had 2424 votes for county clerk, Henry F. Yates 2419, H. F. Yates 14, Frey Yates 3, and several were given for George Ferguson. These abbreviated votes were claimed for the relator, and would entitle him to his election, even if the votes for the defendant in Mayfield, one of the towns in Montgomery county, were properly returned. But the relator gave the certificate of the inspectors of that town in evidence, which was thus: "Two hundred and twelve votes were given for Henry F. Yates, for the office of county clerk, thirty votes were given for Richard Dodge, four votes were given for R. Dodge, and one hundred and sixteen votes *were given for George D. Ferguson, each for the same office. The relator objected that the certificate did not show, as to the defendant, what office the votes were for. The judge held the fair construction of the certificate

to be, that the votes given for Dodge, and the defendant, were for the same office as those given for Yates; and the word *each,* as used, meant *severally or respectively.* He, therefore, received the evidence.

The relator then called Oren Johnson, one of the board of canvassers; and offered to prove by him and other canvassers, that they supposed the votes which were given for H. F. Yates, were intended by the voters to be given for the relator, Henry F. Yates; and that they did not allow them to him, because only the initials of his name, and not the name itself, was on them. The relator also offered to prove, that the persons who put in those votes, actually intended to vote for Henry F. Yates. This evidence was objected to by the defendant; and the judge decided that the court could not go back beyond the ballot boxes, for the purpose of ascertaining the intention of the voters; that such a principle would be of most dangerous tendency, as it would lead to subornation of perjury; and that too under such circumstances, that it would be impossible to convict the offender; that the intention of the electors must be determined from the ballots themselves, as they were found in the boxes and certified by the returns of the inspectors, in connection with such facts as were matters of public notoriety; and which, therefore, were presumed to be known to the electors when the contested ballots were given; that the statute required the name of the candidate to be written on the ballot; and the canvassers were bound to reject these votes, whatever their opinion of the intention of the voters might be, unless they were satisfied that the ballots contained the name of the relator. That if H. F. Yates was the name of the relator, he was at liberty to establish that fact by proof on the trial.

The judge received evidence that the relator was usually called Frey Yates, and not H. F. Yates; though his signature was sometimes written in the latter way. It appeared also that the relator was formerly clerk of Montgomery county; and several witnesses, who were electors in that county, said they heard no person by the name of

[*104]

Yates, beside the relator, spoken of as candidate for that office at the election of 1825.

The relator then offered to prove that the inspectors of election, when they canvassed the votes, and made out their certificate, supposed that the votes of H. F. Yates were intended to be given for the relator; and also offered to prove that a person on seeing a letter addressed to H. F. Yates, would understand that it was intended for the relator.

The court decided that the relator might give any evidence, and go to the jury upon the question, whether the relator was known by the name of H. F. Yates, as well as by the other names which had been testified to. But if he was not called by that name, and that was not his real name, it was immaterial whether he was in the habit of signing his name at length, or only with the initials, or how persons would understand letters addressed to him by the initials only. That the correct rules for the regulation of the town inspectors, and the county canvassers, were those which had been established by successive boards of state canvassers; and which had regulated the decisions of the state board for many years. One of those rules was, to allow all votes which were mis-spelled, if the mis-spelling did not materially alter the sound of the name; another was, to allow the usual abbreviations of a name; as Geo. for George, Hen. for Henry, &c.; and a third rule was to reject those votes where the initial letters of the christian or surname only were used. That these rules had been settled by men of the first talents, several of whom had filled the highest judicial offices in the state; and their decisions had generally been made when the election of candidates did not depend upon the decisions. It would, therefore, be improper for any board of inspectors, or county canvassers, or even for a judge at the circuit, to adopt different rules of decision, before *those adopted by the state canvassers should be pronounced wrong by the higher tribunals of the state. The decisions of legislative bodies, who were the exclusive judges of the qualifications of their own members, were liable, in every instance, to be

more or less affected by political prejudices or individual partialities. Their decision was always made with direct reference to the right of the particular individuals to the office; and hence it was, that those decisions were generally made by small majorities, and without much uniformity.

The relator excepted to the various decisions of the judge, who charged the jury in conformity to those decisions; and they found for the defendant.

A motion was now made in behalf of the relator for a new trial.

The cause was very fully argued at the present term by

*M. T. Reynolds* and *A. Van Vechten*, for the relator, and

*W. I. Dodge* and *H. Bleecker*, contra;

But the general views expressed by the respective counsel, will be found so fully stated in the decisions and charge of his honor the circuit judge, already given, and the opinion of this court, that it is deemed unnecessary to state the arguments.

*Curia, per* SAVAGE, Ch. Justice. The judge decided correctly, beyond all doubt, as to the return from Mayfield. As to the other questions; the object of an election is, that the person receiving the greatest number of votes in his favor, shall have the office designated by the electors. The statute requires, that the election shall be by ballot, "which ballot shall be a paper ticket, containing the name of a person for clerk of said county." (Laws, sess. 45, ch. 201, s. 7, p. 271.) The inspectors, after closing the poll, shall set down in writing the names of the several persons voted for at any such election, with the number of votes, in words at full length. (Id. s. 9, p. 273.) *It was contended on the argument, that here was a distinction intended between the name on the ballot and the name on the certificate of the inspectors; but I apprehend it is the number of votes which are particularly alluded to, as necessary to be written in words at full length.

[*106]

A *name*, I understand to be a discriminative appellation, or designation of an individual. This is so understood universally, and the state canvassers, in the rules adopted by them, to which the learned judge at the trial referred, so understand it. They admit the letters Geo., to represent George. Why? because, by common consent, they are admitted to represent that word. So they receive Hen. for Henry, not because the man's *name* is Hen ; but because Hen. is universally admitted to represent Henry. The state canvassers, then, do not confine themselves to names written or printed at full length ; but they take abbreviations. Why do they receive abbreviations when the act says the ballot shall contain the name? The answer must be because the abbreviation is evidence of the intent of the voter. The intent of the voter is to be ascertained by the canvassers, not by examining witnesses or testimony of any description, except that which is inherent in the ballot itself. From this the canvassers adjudge that the abbreviation represents the *word*, which word represents the *name* of the person voted for.

When we permitted an information to be filed in this case, it was represented to us that the ballots containing the designation H. F. Yates, were intended for the relator. The canvassers had acted upon the idea that they designated some other person. They had no means of examining witnesses, or of receiving any evidence beside what was upon the ballot itself. Courts and juries are not so restricted. They possess more ample means to determine any fact which is left in uncertainty ; and, in my judgment, the learned judge erred in applying the same rule to an investigation by a court and jury, which is applicable to a tribunal who do not possess the power of examining witnesses upon oath. From an inspection of the paper itself, it might well be doubted, whether H. F. Yates represented [\*107] *Henry Frey Yates, or some other Yates whose christian name was represented by the same letters ; and the canvassers, as a board, were not bound to know that no other man of the name of Yates was a candidate for the office of county clerk. But a court and jury can learn from testimony, facts

and circumstances which may lead to the irresistable con-
clusion that those votes were intended for the relator and
no other. That the relator frequently subscribed his name
H. F. Yates, that he had formerly been clerk, and then
was a candidate for that office, that people generally would
apply those letters to the relator, and that no other person
was known in the county to whom those initials were ap-
plicable, were facts which, if proven, would justify the
jury in finding that those votes were intended and given
for the relator.

The judge limited the relator to greater strictness than
the canvassers. He required him to prove that his name
was H. F. Yates; whereas the true question was, whether
those letters were abbreviations for his name? This is
upon the same principle that Geo. and Hen. are allowed to
represent George and Henry. Hen. is not, strictly speak-
ing, a name, as Henry is; but the fact is, that the letters
Hen. are an abbreviation for Henry. Why then may not
H. be also an abbreviation for the same name? It un-
doubtedly may; and so the question should have been put
to the jury. A new trial must therefore be awarded, to de-
termine the question whether the votes given for H. F.
Yates, were not given for the relator; the costs to abide
the event.

Another proposition was advanced by the judge, to which
I cannot assent; that you may not look beyond the ballot
boxes for testimony, because of the danger of perjury and
subornation of perjury. I consider the question fairly be-
fore a jury, and to be proved, like all other facts, by the
best evidence which the nature of the case admits of. The
elector who put in the ballot is certainly higher evidence,
as the person designated by it, than the opinion of any
other. Such elector is competent, unless he is to be ex-
cluded from principles of public policy; *and if any such
principle excludes him, it must be the presumption that he
will swear false. Deplorable, indeed, must be the state of
society, where such a presumption is to be indulged against
the only source of all legitimate authority, the electors, the
people. I deny it, and enter my protest against it.

It is true, if the voter should swear falsely, you probably cannot convict him of perjury. But are we to reject every witness who comes to swear, under such circumstances, that, if he swears false, he cannot be convicted of perjury? I know of no such rule of evidence. The circumstances under which a witness swears, are proper to be considered by the jury, in order to determine the degree of credit due to him; but not to determine his competency.

Suppose a case where the statute of limitations is pleaded: A witness swears that the defendant admitted the debt to him, and promised to pay it, no other person being present. Is he presumed to swear falsely, because, if he does, you cannot convict him of perjury? On an indictment for murder, one witness swears that he saw the prisoner kill the deceased: no body else saw it, or was in a situation to see it, or to contradict the witness; must he be presumed to have committed perjury? If this principle is to be engrafted upon the law of evidence, we must always inquire, before a witness is sworn, whether he can be convicted of perjury if he swears falsely; and if not, he must be rejected. The doctrine of this court is, let any man be a witness in the cause, who is not interested, nor morally disqualified. If this testimony is incredible, or is contradicted, let it be rejected by a jury; but never reject a disinterested witness, because you presume he will swear falsely. If this is to be presumed of one voter, it is so of all. What a picture this of civil society! of a representative government![1]

[1] See *The People* v. *Van Slyck,* 4 Cowen. 297; *The People* v. *Vail,* 2 Wendell, 12; *The People* v. *Seaman,* 5 Denio, 409.