THE PEOPLE ex rel. JOHN HAINES, and others, *v.* WILLIAM H. SMITH, County Judge of Ontario county.

(GENERAL TERM, FOURTH DEPARTMENT, NOVEMBER, 1870.)

The Law of 1869 (ch. 907), which authorizes the creation and issue of bonds of municipal corporations as therein provided, for investment in railroad stock, enacts (§ 2), that the county judge to whom the application, according to section 1 of the act, is made, shall take proof of the allegations of the petition, and that " if it shall satisfactorily appear to him that the said petitioners, &c., do represent a majority of the taxpayers of the said muncipal corporation, as shown by the last preceding tax list or assessment roll, and do represent a majority of the taxable property upon said list or roll, he shall so adjudge and determine, &c.,' and thereupon appoint commissioners, &c.—*Held*, that in addition to the verified petition, which is necessary to confer jurisdiction, the act requires legal proof of the necessary facts; and where the judge assumed

The People ex rel. Haines *v.* Smith.

to render judgment establishing the facts without such proof, that it was error which could be reached by *certiorari.*

Where a number of the signatures to the petition, sufficient, if withdrawn, to reduce the number of petitioners to less than the majority required by the Statutes, were written with the initial letters only of their Christian names, and, without proof of identity, were held by the county judge to be, *prima facie,* the signatures of persons whose Christian names ( having the same initial letters ), were put down in full upon the assessment roll, his judgment declaring the petition made by the necessary majority was upon *certiorari* reversed for error.

This was a certiorari to the county judge of Ontario county to review proceedings under the act of 1869 (chap. 907, p. 2303), to permit municipal corporations to aid in construction of railroads.

The return stated the presentation of a petition to the county judge as follows :

" The petition of the undersigned respectfully states : That your petitioners are a majority of the tax-payers of the municipal corporation in said State, known as the town of Phelps, in the county of Ontario, and State of New York, whose names appear upon the last preceding tax list or assessment roll of said corporation, as owning or representing a majority of the taxable property in the corporate limits of said corporation ; that your petitioners represent a majority of all the taxable property in said corporate limits, appearing on said last preceding tax list or assessment roll of said corporation. That your petitioners desire that said municipal corporation shall create and issue to the Sodus Point and Southern Railroad Company its bonds to the amount of one hunderd and twenty-five thousand dollars, and invest the same or the proceeds thereof, in the stock of the railroad company, in said State, known as the Sodus Point and Southern Railroad Company, pursuant to the provisions of chapter 907 of the Laws of the State of New York, passed May 18th, 1869."

The petition was verified, as follows, viz. :

" STATE OF NEW YORK, COUNTY OF ONTARIO, *ss :* Hiram Peck, being duly sworn, deposes and says that he is one of the petitioners, whose name is signed to the foregoing and annexed

petition, and is one of the tax-payers in the municipal corporation in said State, known as the town of Phelps in said county of Ontario, that he has carefully compared the 'names of the petitioners signed to said petition with the names of the tax-payers which appear upon the last preceding tax list and assessment roll of said corporation, as owning or representing the taxable property in the corporate limits of such corporation; that all the names to said petition appear upon the said tax list and assessment roll as tax-payers, owning or representing taxable property as aforesaid; that the number of names of petitioners to said petition is five hundred and sixty, and that the whole number of names of tax-payers owning or representing the taxable property in the limits of said corporation which appear upon the said tax list or assessment roll is one thousand and twelve, that the amount of taxable property which such petitioners as tax-payers own and represent in the corporate limits of said corporation as shown by said tax list or assessment roll is one million and forty-nine thousand five hundred and seven 91-100ths dollars, and that the whole amount of taxable property in the corporate limits of said corporation as shown by said tax list, or assessment roll, is one million eight hundred and fifty-five thousand, sixty-three 07-100ths dollars. And deponent further says that the petitioners who have signed said petition are a majority of the tax-payers whose names appear upon the last preceding tax list and assessment roll of said corporation, and that said petitioners own and represent a majority of the taxable property in the corporate limits of the said corporation.

HIRAM PECK."

Subscribed and sworn to before me }
   this 14th day of May, 1870.   }

WM. H. SMITH,<br>*Ontario Co. Judge.*

The petition presented a large number of signatures. It also appeared from the return, that the amount of property necessary under the statutes for the petitioners to own or represent in the aggregate was $927,476.54, that the necessary

proceedings were taken pursuant to the statute for a hearing of the matter before the county judge, and that he decided that the aggregate amount of property owned by the petitioners of the property upon the assessment roll in question was $945,956.62½; and in making this decision, that he had treated a large number of petitioners whose names had been signed to the petition with the initial letters of their Christian names prefixed to their surnames, as being the same persons whose Christian names were written out in full upon the assessment roll; and that he had also regarded various names signed to the petition, but varying in some particulars (of which instances are given in the opinion of the court), from any names upon the assessment roll, as being the signatures of persons upon such roll.

It also appeared from the return that an order or decree had been entered by the county judge, declaring the petition signed by a requisite number of tax-payers of the town of Phelps, under the statute, and the representation by such petitioners of the necessary amount of property in said town, as put down upon such roll, and that he had appointed commissioners, &c., and ordered his judgment to be entered.

*H. L. Comstock*, for the relators.

*Stephen K. Williams*, for the respondent.

Present — MULLIN, P. J., JOHNSON and TALCOTT, JJ.

TALCOTT, J.   The writ of certiorari in this case brings before us proceedings instituted under chapter 907 of the Laws of 1869, and the act of 1870 (which subjects the county of Ontario to the provisions of the act of 1869), for the purpose of "bonding" the town of Phelps, in the county of Ontario, in behalf of the "Sodus Point and Southern Railroad Company."

The act in question provides, that, where the petition, verified, &c., is presented to the county judge, he shall issue, and

cause to be published, a notice, stating that on the day speci-
fied he will proceed to take proof of the facts and circum-
stances set forth in the petition, as to the number of tax-payers
joining in said petition, and the amount of taxable property
represented by them. Section 2 of the act provides, that
"it shall be the duty of the said judge, at the time and place
named in said notice, to take proof as to the said allegations
in said petition; and if it shall appear satisfactorily that the
said petitioners, or the said petitioners and such other tax-
payers of said town as may then and there appear before him
and express a desire to join as petitioners in said petition," do
represent a majority of the tax-payers of said municipal corpo-
ration, as shown by the last preceding tax list or assessment
roll, and do represent a majority of the taxable property upon
said list or roll, he shall so adjudge and determine, and cause
the same to be entered of record; and such judgment and the
record thereof shall have the same force and effect as other
judgments and records in courts of record in this State."

This is a proceeding by which the private property of non-
consenting tax-payers may be, in effect, pledged or mortgaged,
indirectly, for what is assumed to be a public purpose. In all
such cases the statute conferring the authority must be fully
complied with. The proceeding before the county judge is
mainly for the purpose of establishing the fact that a majority
in number, who also represent a majority of the taxable pro-
perty in the town, are in favor of the proposed issue of the
town bonds.

This fact is to be established by a judicial inquiry, and,
upon its being established, the county judge is to render a
judgment to that effect, the evidence as to who are the tax-
payers of the town, and the amount of the taxable property
in the town by them respectively represented, being the last
preceding tax roll. The judge is required, before rendering
his judgment, to take *proof* of the facts in question.

This can mean nothing less than legal proof, which shall
tend to establish the fact with a reasonable degree of certainty.
It is the right of the non-consenting tax-payers to insist upon

this; and if the judge assumes to render a judgment purporting to establish the fact, without any legal proof, he is guilty of an error, of which the non-consenting tax-payers may justly complain, and which is undoubtedly reached by a writ of certiorari. The affidavit to be annexed to the petition is not the proof spoken of.

The petition and verification are necessary in order to confer upon the county judge the jurisdiction to proceed to take the proofs.

Sundry objections are made to the validity of the proofs which were taken by the county judge in the case, as disclosed by the return. It will only be necessary to consider one class of those objections.

Sundry names, purported to be signed to the petition, with initials only representing the Christian names, and these were counted by the judge in his decision as representing the amount of taxable property assessed in the tax roll, to persons whose Christian names had corresponding initials, and whom he decided to be the same persons who had signed the petition; and other names signed to the petition, and varying in other respects from those on the tax roll, were held to be the same.

The following examples will sufficiently illustrate this point:

H. L. Cummings was held to be "Hubbard L. Cummings," who was assessed on the tax list for $1,171.50.

Alexander Wormer, was held to be "Alexander Van Wormer," who was assessed on the tax list for $4,047.00.

Sarah A. Reynolds, was held to be "Widow Sally Reynolds," who was assessed on the tax list for $106.50.

Mrs. M. M. Lovejoy, was held to be "Wid. Marietta Lovejoy," assessed on the tax list for $159.75.

R. R. Anderson, was held to be "Reid Anderson," who was assessed on the tax list for $2,982.00.

There were much more than enough of the names thus counted, if the amounts for which the persons who they were held to be identified with, on the tax roll, were assessed, had been deducted from the amount of taxable property held to be represented, to reduce the amount of taxable property repre-

sented greatly below a majority of the taxable property assessed on the tax roll.

To sustain the judgment of the county judge it is necessary that these names should be counted. In fact, the number of names purporting to be signed in the petition with initials of Christian names only, and which were held to be identical with names on the tax roll, where the Christian name was written out in full, were more than sufficient, if the amount of property held to be represented by them is deducted, to reduce the amount represented considerably below a majority.

It is not improbable that the county judge was, in point of fact, correct in his identification of the names on the petition with those on the tax roll. The question is, was it proved? The personal knowledge of the county judge on this subject may have satisfied his own mind as to the identity of the names. He does not return any personal knowledge, and if he did it would be of no importance. He is not authorized to act on his own knowledge or prior information, but must take proofs. Doubtless it might have been proved that the names of the petitioners represented the persons on the tax roll with whom they were identified. The question is, was such proof given? It was not shown that the petitioners in question were tax-payers of the town. It was not shown that no other persons with corresponding surnames and initials resided in the town, or were tax-payers therein.

The assessors were not called to state what persons they intended to designate by the name on the tax roll made out by them. In fact, none of the various descriptions of evidence bearing upon the question of the identity, in fact of the petitioners and the persons named on the tax roll, were resorted to. Hiram Peck testified, that the names of persons appearing on the petitions appeared as tax-payers on the tax list, with certain exceptions.

This, as is evident from the context, was, and was understood to be, simply the result of a comparison of the petitions with the tax roll, and not a personal identification of the individuals named in the tax roll with those who had signed the

petition, and, at most, was a mere opinion of the witness, who is not shown to have any better qualifications for judging than any other person upon mere inspection and comparison of the petition and tax roll.

The county judge returns, as to "the names of persons, whose names, it was claimed by counsel for contestants, varied from the names on the assessment roll," he held them "to be, *prima facie*, the same names as those appearing on the assessment roll aforesaid, in the absence of any proof as to the fact, except that which appears in the evidence above, and that furnished by the assessment roll, with the exception of the name of Sarah Lyons, who was identified as the person on the roll signed Widow Eleazer Lyons." This statement, as appears, embraces all the initial names; and it is clear that the county judge held that the names signed to the petition with only initials for the Christian name were, as a matter of legal proof, *prima facie* identical with names on the roll with which the surname and the initial letters of the Christian name corresponded; and in so doing he has held the same initial letter to stand for a variety of Christian names, as the exigencies of the case required. The authorities are quite numerous to show that the county judge erred in thus holding, and that there is no legal presumption that J. Smith represents either John, James or Joseph Smith, without some further evidence than the identity of the initial letter. (*People* v. *Ferguson*, 8 Cow., 102; *Jones' Estate*, 27 Penn. St. R., 336; *Tweedy* v. *Jarvis*, 27 Conn., 42; *Tellers* v. *The State*, 7 Ind., 659; *Rockwell* v. *The State*, 12 Ohio, N. S., 427, &c.)

The judgment rendered by the county judge in this matter must be reversed, upon the ground that the fact that the petitioners represented a majority of the taxable property of the town of Phelps, purporting to be adjudged and determined by said judgment, was not proved before him.

Judgment reversed.