The People of the State of New York, ex rel. John Haines and Isaac Roy, Respondents, *v.* William H. Smith, county judge of Ontario county, Appellant.

Proceedings having been had to authorize the issue of bonds of a municipal corporation to aid in the construction of a railroad, under the act of 1869, requiring the county judge to determine certain facts and render judgment thereon (Laws of 1869, chap. 907, p. 2303), a writ of certiorari may properly issue to such county judge, for the purpose of a review of his proceedings by the Supreme Court, notwithstanding his determination has been entered of record.

Upon the return to such writ the court is not limited to the inquiry whether jurisdiction of the parties and subject-matter was acquired, but should examine the evidence and determine whether there was any competent proof of the facts necessary to authorize the adjudication made, and whether, in making it, any rule of law affecting the rights of the parties has been violated.

In such proceedings, competent common-law evidence of the facts to be established should be produced before the county judge, and, as his determination is binding upon those who do not appear before him, no admission, or other act done or omitted, by those who contest the application, can be regarded as evidence, or affect the rights of those not appearing.

It is not sufficient that the signatures to the petition be proved, unless such petitioners are in some way identified as the persons named on the "last preceding tax list or assessment roll." If the names upon both are identical, this is *prima facie* evidence that the persons are the same; but the county judge may not act upon his personal knowledge, and, where initials only are given, additional evidence of identity is requisite.

The authority conferred by the act must be exercised in strict conformity
to and by a rigid compliance with the letter and spirit of the statute.

The petition required is that of the tax-payers, and the act is not satisfied
by the petition of an agent. The power conferred is personal, and can-
not be delegated ; and it is error to include as petitioners those whose
names are affixed to the petition, in their absence, under a verbal authority
given at some previous time.

(Argued June 15th ; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme
Court, in the fourth judicial department, reversing, upon
certiorari, a judgment of the county judge of Ontario
county, in a proceeding on an application to bond the town
of Phelps, Ontario county, to aid in the construction of the
Sodus Point and Southern railroad.

By the return it appeared that a petition was presented to the
county judge of Ontario county, purporting to be signed by a
majority of the tax-payers of the town of Phelps, whose names
appear upon the last preceding tax list or assessment roll as
owning or representing a majority of the taxable property in
the town, praying for the issue of its bonds to the amount of
$125,000 in aid of the Sodus Point and Southern railroad,
pursuant to chapter 907 of the act of 1869, verified by the
oath of one of the petitioners.

The county judge thereupon made an order for publication
of notice of hearing, and, pursuant to such notice, a hearing
was had before him and proofs taken, counsel appearing for
the petitioners and also for those opposed to the application.
He determined and adjudged that the petition was signed by
a sufficient number of tax-payers ; appointed commissioners,
and ordered that his judgment and determination be entered
of record in the clerk's office of his county.

The relators sued out a writ of certiorari, upon the return
to which the judgment of the county judge was reversed.

It appeared that many names in the petition were written
with the initial letters of the Christian names, which the
judge counted and allowed, without further evidence of
identity than was furnished by comparison thereof with those

appearing on the assessment roll; and in several instances similar names were counted as representing the same persons, as "Wormer" and "Van Wormer," "Owen" and "Owens," "Sarah" and "Sally," "Frank" and "Franklin," without other evidence.

The county judge received proof that names affixed to the petition were written by others, under verbal authority previously given, and not in the presence of the persons whose names were so written, and counted and allowed such names in making his determination.

The case in the Supreme Court is reported in 3 Lansing, p. 291.

*George F. Danforth* and *Stephen K. Williams*, for the appellant, insisted, among other things, that certiorari to the county judge, after judgment entered, would not lie. (*People* v. *Jewett*, 2 Wend., 314 ; *People* v. *Supervisors*, 1 Hill, 195 ; *People* v. *High'y Com'rs*, 30 N. Y., 72.) That identity of names was sufficiently shown. (*Jackson* v. *Goes*, 13 John., 518 ; *Jackson* v. *King*, 5 Cow., 237 ; *Jackson* v. *Cody*, 9 id., 140 ; *Fenton* v. *Perkins*, 3 Mis., 144 ; *Birch* v. *Rogers*, id., 227 ; *Greenshield* v. *Crawford*, 9 Mees. & W., 314 ; *Quarles* v. *Collier*, 3 Strobh., S. Car., 223 ; *Jones Estate*, 27 Penn. St., 336 ; *Woodbury* v. *Dye*, 10 Rich. L. R., S. C., 31 ; *Toole* v. *Peterson*, 9 Ind., 180 ; *Isaacs* v. *Wiley*, 12 Vt., 674 ; *Milk* v. *Christie*, 1 Hill, 102 ; *Smith* v. *Ross*, 7 Miss., 463 ; *Orme* v. *Shepherd*, id., 606 ; *Thompson* v. *Lee*, 12 Ill., 242 ; Co. Litl., 3 ; 1 Ld. Raym., 562 ; Vin. tit. misnomer, C., 6, pp. 5, 6 ; *Franklin* v. *Talmage*, 5 John., 84 ; *Rosevelt* v. *Gardner*, 2 Cow., 463 ; *Edmunson* v. *State*, 17 Ala., 179 ; *People* v. *Cook*, 14 Barb., 259 ; *McKay* v. *Speak*, 8 Texas, 376 ; *Hendershott* v. *Thompson*, 1 Morris, Iowa, 186 ; *State* v. *Martin*, 10 Mis., 391 ; *Kaig* v. *Hutchins*, 8 Foster, N. H., 561 ; *People* v. *Freeman*, 6 Cal., 205 ; *Van Vorhies* v. *Budd*, 39 Barb., 479 ; *Allen* v. *Taylor*, 26 Vt., 599 ; *Gershaw* v. *Walker*, 10 Ala., 370 ; *Fletcher* v. *Conly*, 2 Greene, Iowa, 88 ; *State* v. *Blakenship*, 21 Mis., 504 ; *Morton* v. *McClure*,

22 Ill., 433; *Moore* v. *Anderson*, 8 Ind., 18; *Alvord* v. *Moffatt*, 10 Ind., 366; *Barnes* v. *People*, 18 Ill., 52; *Kalm* v. *Herman*, 3 Kelley, Geo., 266; *Myer* v. *Fegaly*, 39 Penn. St., 429; *State* v. *Haverly*, 21 Mis., 498; *Mercedith* v. *Huesdale*, 2 Caines, 362; *Jackson* v. *Boneham*, 15 John., 226; *Petrie* v. *Woodworth*, 3 Caines, 262; *People* v. *Pease*, 27 N. Y., 45; *Regina* v. *Mayor of Hartford*, 21 L. J. N. S., Q. B., 71; *Regina* v. *Avery*, 18 Q. B., 83 E. C. L., 576.) That the decision of the county judge on this question is conclusive. (*People* v. *Assessors*, 39 N. Y., 81; *People* v. *Bd. of Police*, id., 586.)

*H. L. Comstock*, for the respondents, that there was not sufficient proof of identity, cited *People* v. *Ferguson* (8 Cow., 102); *Jones' Est.* (27 Penn. St., 336); *Zellers* v. *State* (7 Ind., 659); *Rockwell* v. *State* (12 Ohio N. S., 427); *City Counsel* v. *King* (4 McCord., 487); *Quarles* v. *Collier* (3 Strobh., 223); *Birch* v. *Rogers* (3 Mis., 227); *Garrison* v. *People* (21 Ill., 535). That the court may go beyond the question of jurisdiction, and examine the case upon the whole evidence, he cited *People* v. *Bd. of Police* (39 N. Y., 506); *People* v. *Hillhouse* (1 Lans., 87); *People* v. *Assessors of Albany* (40 N. Y., 154).

Grover, J. The counsel for the appellant insists that, the county judge having made his decision, and a judgment in pursuance thereof having been rendered and the record filed with the county clerk, before the writ of certiorari was sued out, the proceeding was not, at the time of the service of the writ, pending before him, and that the judgment was not, therefore, removed into the Supreme Court by the writ directed to him. In support of this position, the counsel cites the case entitled *The People* v. *The Comm'rs of Highways of East Hampton* (30 N. Y., 72). That case has no analogy to the present. That was a certiorari to a jury impanneled to determine whether the fence of the relator encroached upon the highway, and if so, to what extent. The

jury, having made their certificate specifying the encroach-
ment, had nothing further to do in the premises ; and the
court rightly held, that a certiorari could not be sued out
directed to them, and, that if it was, and served upon them,
the order of the commissioners of highways declaring and
specifying the encroachment, not being in their possession, or
control, could not be returned, and that if it was in some way
returned, such return was a nullity. The case shows, that in
some way, but it does not appear for what purpose, the com-
missioners of highways appeared in the matter in the Supreme
Court. The court held, that such appearance was unauthor-
ized, the writ not being directed to them, and that the writ
should have been quashed. In the present case, the statute
authorized and required the county judge, upon the pre-
sentation of the petition after publication of the requisite
notice, to proceed judicially to take proof concerning and to
determine certain facts and render judgment thereon, which
was to have the like force as other judgments, as evidence of
the facts determined. The statute is silent as to when or with
whom the record of the judgment should be filed. The judg-
ment was rendered by the county judge, and he was the pro-
per officer to whom to direct the writ, and he was properly
required thereby to make return of the proceedings had
before, and the judgment rendered by him to the justices of
the Supreme Court, pursuant to the mandate of the writ.
The result would have been the same had the statute required
the record of the judgment to be filed with the county clerk,
or with any other officer. Such officer, for the purposes of a
review, would have been regarded as the clerk of the judge, for
the purpose of preserving the record of a judgment rendered
by him. The proceedings were, therefore, properly before
the Supreme Court for the purpose of a review. Whatever
may have been the conflict of authority heretofore upon the
question, whether, upon a common-law certiorari, the court
can inquire into anything beyond the jurisdiction of the tri-
bunal over the parties and subject-matter, it must now be
regarded as settled, in this State, that it is the duty of the

court, in addition thereto, to examine the evidence and determine whether there was any competent proof of the facts necessary to authorize the adjudication made, and whether, in making it, any rule of law affecting the rights of the parties has been violated. (*The People* v. *The Board of Metropolitan Police*, 39 N. Y., 506; *The People* v. *The Assessors of the City of Albany*, 40 N. Y., 154.) Section 2, vol. 2 of Laws of 1869, p. 2304, makes it the duty of the county judge, after the presentation of the petition specified in section one of the act and the publication of the notice thereby required, to take proof, as to whether the petitioners and such other tax-payers of the town as may then and there appear before him and express a desire to join as petitioners in said petition, are a majority in number of the tax-payers of the town, as shown by the last preceding assessment-roll, and represent a majority of the taxable property upon said roll. The assessment-roll is made the only competent evidence of the number of tax-payers and of the amount of taxable property in the town. It is conclusive upon these points. The only questions upon which proof is to be taken by the county judge, and which are to be determined by him, are whether the petitioners and such others as appear before the judge and express a desire to join in the petition constitute a majority in number of the tax-payers, and whether they are liable to taxation as owners of a majority of the property assessed for that purpose in the town. The correct determination of these questions is of grave importance, as upon it may depend the creation of a debt against the town to the extent of one-fifth of all the property taxable therein. The policy of the statute is to make such determination final. Competent common-law evidence of the facts to be established should be produced. The statute authorizes no other. It must be borne in mind, that the determination is final, not only as to taxable inhabitants who appear and contest the fact, but equally so as to those who do not appear. It follows that the admission of those who appear, or of any one authorized by them to act as counsel, or any other act done or omitted by them, cannot

be regarded as any evidence upon the inquiry, as those appearing do not represent those who do not appear and cannot do anything to affect their rights. The signatures to the petition by the petitioners, found as such by the judge, were proved, but the persons proving the genuineness of such signatures give no testimony tending to identify such petitioners with persons assessed upon the roll, except Hiram Peck. The counsel for the appellant insists that his testimony may be construed in the light of the objections made to its competency, insisting that such objections show how it was understood by the counsel of the contestants, who appeared before the judge. The answer to this is, that it is immaterial how the counsel understood it. The inquiry is, what does the language used by the witness show that he intended to be understood as testifying to? The question was, state whether the names of the persons appearing on the petitions appear as tax-payers on the tax list of the town of Phelps for the year 1869. The answer was, yes, with certain exceptions. There are several names on the petition where no amount is carried out, and they are not counted in the number of names or amounts. I have carried out the amount assessed to each individual. The figures set opposite the names of petitioners are the amount they are assessed on the assessment roll. No one could have understood the witness as testifying to any personal knowledge of the identity of the petitioners with the persons named upon the roll. His clear meaning was that he had compared the roll with the petition, and from such comparison had formed the conclusion that the names designated the same persons upon both, so far as they appeared upon both. Both were before the judge, and copies of each, so far as this question is concerned, are contained in the case. Upon comparison it appears that the surnames are the same in both, to an extent sufficient to sustain the judgment as to the number and amount of property of the petitioners, but upon the petition an initial letter only is put down as the Christian name, while upon the roll the name at length appears, to an extent sufficient to show that the petitioners were a minority

in number of the tax-payers, and were not assessed for half the amount of property upon the roll, unless the latter are included as petitioners.     Where the names upon both were identical, it was *prima facie* evidence that the persons upon each were the same. (*Hatcher* v. *Racheleau*, 18 N. Y., 86.) But where the names are not identical, both upon reason and anorthity, no such presumption arises.     In case of identity of name, the presumption arises from the improbability that different persons have the same name, and therefore the onus is cast upon ·the party denying the identity to show that it is a different person.     But an initial letter may denote any one of a great number of names, and, unaided by proof of any other fact, designate the person with but little more certainty than as though the name abbreviated by the initial was wholly omitted.     It was accordingly held in *The People* v. *Ferguson* (8 Cow., 102) that it might well be doubted whether H. F. Yates represented Henry Fry Yates or some other Yates whose Christian name was represented by the same letters, but that it might by proof of other facts be shown that Henry Fry Yates was the person really intended.     It requires no argument to show that a given fact cannot be proved by proof of another fact, showing that the one sought to be proved is doubtful; such proof furnishes no evidence of the fact sought to be proved.     The rule adopted in *The People* v. *Yates* has since been followed in this State.     It was not designed by the remarks of SELDEN, Judge, in *The People* v. *Pease* (27 N. Y., 45), to the effect that the canvassers erred in refusing to allow to the relator (Moses M. Smith) votes for M. M. Smith, to innovate upon this rule.     The learned judge directly thereafter cites *The People* v. *Ferguson*, without any expression of disapprobation.     What he intended was, that from the facts proved upon the trial, it appeared that Moses M. Smith was the person for whom the votes were intended, and hence the error.     But the facts proved upon the trial may have been known to the canvassers, and if they had the right to take such facts into consideration, in canvassing the votes, it would not aid the appellant.     It is clear from the statute that the judge could

not act upon his personal knowledge of any fact, but must be governed by the proof given in making his determination. The counsel for the appellant insists that the petition and affidavits, verifying the same, were made evidence of the facts, for the reason that they were given in evidence by the counsel of those appearing to contest such facts. But we have already seen that the counsel could not, by any act, affect the rights of those not appearing, and their rights are to be considered by the court, equally with those appearing, in determining the case. The Supreme Court was right in reversing the judgment of the county judge. I was inclined to remand the case to the county judge to proceed thereon *de novo,* pursuant to sec. 4, chap. 725, Laws of 1871, but a perusal of the case shows that, upon the hearing, the contestants offered to produce petitioners who desired to withdraw their names from the petition. To what extent petitioners desired to withdraw does not appear, but it may have been to an extent sufficient to change the result, even had it been proved that the names represented by initials were identical with those of tax-payers, when the name appeared in full upon the roll. Without determining whether those signing had a right to withdraw as petitioners, after it has been presented to the judge, yet their desire so to do may well be considered by the court in determining whether to remand the case to the county judge for further proof, no vested right having attached in consequence of the proceedings already taken. The town ought not to be bonded, unless in compliance with the present wishes of a majority of the tax-payers, taxable upon a majority of the property assessed in the town.

ALLEN, J. The order and judgment of the county judge of Ontario county, appointing commissioners, under chapter 907 of the Laws of 1869, with authority to issue the bonds of the town of Phelps in aid of the Sodus Point and Southern Railroad Company, were properly reversed, for the reasons assigned by the Supreme Court. Other objections were taken, at the hearing before the county judge and upon the

argument in this court, relating to the vitality of the law, and the validity and efficacy of any proceedings under it, which, in the view we take of the proceedings, need not be considered. One objection taken before the county judge, not noticed by the Supreme Court, is too important to be passed over in silence, as it may affect very many applications under the act, and if well taken, the irregularity referred to ought not to be encouraged by any implication that might arise from mere silence in respect to it. The power sought to be delegated to a portion of the taxable inhabitants of a municipality to burden and charge the property of all, and subject it to taxation for a purpose foreign to those for which local governments are organized, and with a view to contingent benefits, in respect to which men may differ in opinion, and in aid of works, which in most instances, will more largely benefit some than other portions of the district, alike and equally charged, is one of grave importance, seriously affecting the rights and pecuniary interests of the citizen, and can only be exercised in strict conformity to and by a rigid compliance with the letter and spirit of the act conferring the authority. Nothing can be taken by implication, and the act, as it imposes a burden upon the public, and in a manner deprives the owner of the full control and disposition of his property, by giving to others the power to encumber it, should be strictly construed in favor of the rights of property. I had occasion, quite early in the history of town and city bonding in aid of private corporations, to express my views of the legislation authorizing it; and while the judgment in *Clark* v. *City of Rochester* (13 How., 204), as to legislative power, has not received the sanction of the courts, the effect of such a delegation of power to any portion of the electors or tax-payers of a municipality, and the consequences that may follow, are such as call upon courts to scrutinize very closely every attempted exercise of this power, and before giving it a judicial sanction, to see that every requirement of the law has been fulfilled. It may be that many of the works to which municipal aid is given, under the very liberal legis-

lation of the few past years, and perhaps all, may be remunerative in the shape of dividends to the local governments aiding them, or may indirectly compensate the public for the tax that may follow by the increased value of the property in the locality; but this does not affect the principle. It is still the right of every one, until legally deprived of that right, to determine for himself to what extent his property shall be jeoparded or encumbered for such a purpose, or whether the contingent and consequential benefits of any proposed enterprise will justify a contribution or an encumbrance of his property in its aid. While it is for the legislature to decide upon the wisdom and expediency of the enactment of a law, and the province of the court is simply to interpret the act and give it effect according to the intent of the legislature, a statute in derogation of common right will not be extended by implication, but its operation and effect will be confined to the cases within the express language employed, giving it its ordinary signification, in the absence of any evidence that the legislature intended to use it in a different sense. This is the rule of interpretation of the act, as one giving power to the tax-payers. If the act be regarded as conferring special and extraordinary power upon a judicial officer, giving his orders, by which a public debt is authorized to be created, under laws mandatory upon the local governments to raise the money by tax to pay the same and the interest thereon, as occasion may require, the effect of judgments of courts of record, and making them final, unless reviewed within a limited time and by the prescribed process, it must in that view also be looked upon with jealous eye, and receive the strict construction which is given to all laws of that character. Nothing will be intended in support of his acts, but they must be brought clearly within the statute to be sustained. (*Davison* v. *Gill*, 1 East, 64; *Bigelow* v. *Stearns*, 19 J. R., 39; *Hollenbeck* v. *Fleming*, 6 Hill, 303; *Schneider* v. *McFarland*, 2 Comst., 459; *People* v. *Reed*, 5 Den., 554.)

The act under which these proceedings were had, authorizes a majority of the tax-payers of any municipal cor-

poration, whose names appear upon the last preceding tax list
or assessment roll, as owning a majority of the taxable pro-
perty in the corporate limits, to make application to the
county judge, by petition, verified by the affidavit of one of
the petitioners, etc., etc. A petition of the tax-payers desiring
the creation and issue of the municipal bonds, in aid of the
railroad named, is essential to the jurisdiction of the county
judge. Without such petition he is without jurisdiction, and
his acts and proceedings are nullities. The petition demanded
by the act is that of the tax-payer, and the act is not satisfied
by the petition of an agent. Perhaps, upon a proper warrant,
the name might be signed by another, but it must be the act
of the applicant. Under the act permitting judgment
creditors to acquire the title of the purchaser of lands sold
under a prior execution, the affidavit required to be made by
the assignee of a judgment, claiming to redeem, must be by
the assignee, and cannot be made by his agent. (*People* v.
*Fleming*, 2 Comst., 484; and see *Exparte Bank of Monroe*,
7 Hill, 177.) The power conferred is personal to the tax-
payer, and cannot be delegated by him.

Like the elective franchise, it must be exercised in person,
and is not the subject of an agency. If another hand may
write the name of the petitioning tax-payer, it must be under
a special power for that purpose, so that the act will be the
act of the tax-payer and in the exercise of his discretion.
The act is of a personal nature, involving a personal trust or
confidence, and is incapable of being delegated. A man can-
not do homage or fealty by attorney, nor can one having but
a bare authority or power, act by attorney. (Com. Dig.
Attorney, C., 3.) And when an act is required by statute to
be done by the party, if it can be fairly inferred, from the
nature of the act, that it was intended to be personally done,
it cannot be done by attorney. A person whose consent is
requisite to the due execution of a power, cannot authorize
another as his attorney to consent to any execution of it.
(*Hawkins* v. *Kemp*, 3 East, 410; and see *Attorney-General*
v. *Scott*, 1 Ves. Sr., 407.) The mode of application is pointed

out by the statute, to .wit : the petition of the tax-payer ; and the statute must be followed, and the petition cannot be by an agent. (Sug. on Powers, 223.) A statute authority must in all cases be strictly pursued, and hence a sale by one of two commissioners of loans is void. Both must be present at the sale, and the subsequent execution of a deed by the two will not support the sale. (*Powell* v. *Tuttle*, 3 Coms., 396 ; *Olmsted* v. *Elder*, 1 Seld., 144.) Proof was given, under objection, upon the hearing before the county judge, of the signing of several names to the petition in the absence of the individuals, and under a verbal authority given at some previous time. Evidence was given of other signatures made in the presence of the individuals whose names were thus signed. It is not necessary in this case to pass upon the validity of the latter class of signatures ; but the practice of receiving proof of the other class cannot be too early or too earnestly condemned.

It requires but little knowledge of human nature and the workings of the human mind to see the great danger resulting from so loose a practice in a matter affecting important interests, public and private, and involving the exercise of deliberate judgment and discretion. A little hesitancy ; a diffident dissent ; a little want of firmness on the part of the tax-payers ; anything short of a very decided and emphatic negative may very well be taken as a consent to the signing of the petition, by an earnest, anxious or interested canvasser for signatures ; and when the tax-payer would not have consented to sign for himself, the agent of the enterprise may have drawn from him. what he may honestly interpret as an authority to put his name to the petition ; and so, upon proof of a casual conversation on the public highway, in which the minds of the interlocutors have not in truth met, as remembered and interpreted by one, this may be effectual to bond a municipality to the extreme limit authorized by law.

Proof of one signature thus made, if allowed, may turn the scale and give the decision in favor of bonding ; but if one tax-payer may thus be made a petitioner in his absence, every signature may thus be made, and the municipality will be

bonded, not upon the written petition, but proof of the verbal assent of the individuals. This was not the intention and is not the spirit of the act. To give it such an effect would be to deprive the public of the safeguards prescribed by the act, and the tax-payers of all opportunity for that deliberation and discretionary action implied in the requirement of a written petition.

An examination of the evidence discloses some circumstances which should cause distrust of all signatures made pursuant to verbal authority.

It is well known that the location of the route of the road to be aided has much to do with the consent of the tax-payers, and in this, as in every other case, although it is not directly proved that promises were made or verbal consents given, conditioned upon the route, there is enough appearing to indicate that possibly conditional consents may have been obtained, and afterwards acted upon, upon the idea that the road was or would be located to meet the views of the individual thus consenting.

Because proof of these signatures was received, and the names of the individuals counted and allowed by the judge, as well as for the other reasons assigned by my brother GROVER, I am for affirming the judgment of the Supreme Court.

The proceedings ought not to be sent back for a rehearing. Such a discretion should be exercised cautiously, and generally only when the error has been technical and not substantial. In this case it is very evident that at the time of the hearing the requisite number of tax-payers, representing the proper amount of the taxable property of the town, had not consented to the bonding. Since the institution of the proceedings, as appears by the record, some of the petitioners have removed or cannot be found, and others have died, and doubtless there has been a change in many other property interests.

A new assessment roll and tax list has been made, and it is far preferable and eminently just that those now interested in the taxation of the property in the town should be heard, and that the proceedings should be commenced *de novo*.

All concur with GROVER, J. All except GROVER and PECKHAM, JJ. (who express no opinion as to the positions taken by Judge ALLEN), concur with ALLEN, J.

Judgment affirmed.