### MARTIN v. WOOD.

*(Supreme Court, Special Term, Onondaga County.   October, 1888.)*

WITNESS—IMPEACHMENT—BLASPHEMY—VOTING AT ELECTION.

On an issue of negligence only, testimony of a witness cannot be impeached by asking him if he voted at an election a certain ticket, which was blasphemous; the New York statute requiring ballots to be folded so as to conceal their contents, (Laws 1842, c. 130, tit. 4, § 7,) and forbidding that they be marked to designate the voter, (Laws 1880, c. 366, § 3,) and that the inspectors open them, or allow them to be opened, (Laws 1842, c. 130, tit. 4, § 28.)

Action by Elliot Martin against Zelobus J. Wood for damages for negligence. Judgment for plaintiff, and defendant moves for new trial.

*Palmer & Mattice,* for motion.   *F. D. Shumway, contra.*

VANN, J.   Upon the trial of this action a witness who had given material evidence for the plaintiff was asked on his cross-examination by defendant's counsel if at the town meeting he voted a ticket like the one shown him. This was objected to by the counsel for the plaintiff, upon the ground that under our laws a man has a right to vote as he pleases, and the right cannot be called in question in any collateral manner. The evidence was excluded, and the defendant excepted. The paper so shown to the witness, and to which said question related, was in the following form, namely: "Hear ye what the Lord saith! He that puts the bottle to his neighbor's lips is in danger of hell. From this I shall make out a temperance ticket: For supervisor, God; for town clerk, Christ; for assessor, Andrew; for justice of the peace, Simon; for commissioner, James; for collector, Zebedee; for overseer of the poor, John; for overseer of the poor, Philip; for inspector of election, Bartholomew; for constables, Matthew, Simon, Alpheus, Judas, Libbeus; for excise commissioner, Charles Hoag."

The main point upon which the defendant relies in moving for a new trial is that the court erred in excluding this evidence. Assuming that the answer of the witness would have tended to show that he had been guilty of blasphemy, and thus have affected his credibility, the question remains whether an elector can be asked, under such circumstances, how he voted. It is provided by the constitution of the state of New York that elections shall be by ballot. Article 2, § 5. It is provided by statute that all ballots shall be upon plain, white printing paper, without any impression, device, mark, or other peculiarity whatsoever upon or about them to distinguish one ballot from another in appearance, except the names of the several candidates. Laws 1880, c. 366, § 1. The ballot is required to be so folded as to conceal its contents. Laws 1842, c. 130, tit. 4, § 7. It is made a misdemeanor to mark the ballot of any voter, or to deliver to any voter a ballot marked for the purpose of ascertaining how he voted. Laws 1880, c. 366, § 3. The inspectors of election are required to deposit the ballot, when finally received by them, with-

out opening the same, or permitting it to be opened or examined, in a box corresponding in title with the indorsement of the ballot.    Laws 1842, c. 130, tit. 4, § 28; Election Code, § 704, p. 319.    The object of these provisions is to keep the contents of the ballot secret, so that no one but the elector himself will know for whom he voted, and, by thus preventing intimidation and other improper influences, to secure to the voter the free and independent exercise of the right of suffrage.    Any attempt, therefore, to make public, for any purpose, the contents of a ballot cast by a duly-qualified elector, unless with his consent, is opposed to the spirit of the constitution and laws made for the protection of the elective franchise.    It is the policy of our law to surround the voter with all reasonable safeguards against discovery of how he voted, except by his own voluntary disclosure.    Even in contested election cases, where it is the direct object of the investigation to ascertain how every elector voted, it is well settled in several states that he cannot be compelled to testify for whom he voted.  *Respublica* v. *Ray*, 3 Yeates, 66; *Locust Ward Election Case*, 4 Pa. Law J. 341; *People* v. *Cicott*, 16 Mich. 283; *State* v. *Hilmantel*, 23 Wis. 422; *State* v. *Olin*, Id. 309.    This is also the rule in congressional election cases.    *Easton* v. *Scott*, 1 Cong. El. Cas. 272.    In our state it has been held that, in an action to determine the title to a public office depending upon a general election, the elector may be asked for whom he voted, but with the plain intimation that it is the privilege of such witness to answer or not, as he chooses.    *People* v. *Pease*, 27 N. Y. 45; *People* v. *Ferguson*, 8 Cow. 102.    It has even been held by courts entitled to great respect that the simple provision in a state constitution that all elections shall be by ballot implies such absolute and inviolable secrecy as to prohibit the legislature from enacting that the inspectors of election, on receiving the ballot of any voter, should number the same with figures on the outside to correspond with the number placed opposite the name of the voter on the poll-list kept by the clerks of election.    *Williams* v. *Stein*, 38 Ind. 90; *Brisbin* v. *Cleary*, 26 Minn. 107, 1 N. W. Rep. 825.    No court has gone further in relaxing the rules made to keep the ballot secret than to hold that in *quo warranto* cases, where the direct issue is who received the most legal votes, an elector may be asked how he voted, but that he may decline to answer.

In this action there was no issue as to how the witness voted.    The issue was whether the defendant had been guilty of negligence or not.    The question that was excluded was collateral to this issue, and it was clearly the privilege of the witness to refuse to answer it.    As the question was collateral, and the witness could not have been compelled to answer, there was no error in excluding it.    But I think that the denial of the motion for a new trial should be placed upon the broader ground, that the public policy underlying the ballot system forbids that an elector should be asked how he voted at any election by ballot, held under the sanction of law, unless the object of the issue is to determine who was elected.    As said by the court in *People* v. *Cicott*, *supra:*  "Our whole ballot system is based upon the idea that, unless inviolable secrecy is preserved concerning every voter's action, there can be no safety against those personal or political influences which destroy individual freedom of choice.  *  *  *  The reason why the ballot is made obligatory by our constitution is to secure every one the right of preventing any one else from knowing how he voted."    In this case it was held, not only that the voter could not be compelled to tell for whom he voted, but that no one else could testify upon that point, unless the voter himself consented that the contents of his ballot should be made public.    In *People* v. *Pease*, *supra*, Judge DENIO said:  "The right to vote in this manner [by ballot] has usually been considered an important and valuable safeguard of the independence of the humble citizen against the influence which wealth and station might be supposed to exercise.    This object would be accomplished but very imperfectly, if the privacy supposed to be secured was limited to the moment of depositing the

v.4N.Y.s.no.3—14

ballot. The spirit of the system requires that the elector should be secured then, and at all times thereafter, against reproach or animadversion, or any other prejudice, on account of having voted according to his own unbiased judgment; and that security is made to consist in shutting up within the privacy of his own mind all knowledge of the manner in which he has bestowed his suffrage." Judge Cooley, in his work on Constitutional Limitations, at page 762, says: "The system of ballot voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases, and with what party he pleases, and that no one is to have the right or be in position to question his independent action, either then or at any subsequent time." The ballot enables a man to promise whatever he is asked, but to do as he likes, without fear of criticism. This may encourage deception, but it promotes independence of judgment and action. It enables a man to act better than his professions. As the law, from motives of public policy, has established the secret ballot so as to conceal the voter's action, it should not allow the courts either to disclose such action to the public, or even to compel the voter to claim his privilege of refusing to answer. To answer, or to refuse to answer, is liable to subject the voter to criticism or ridicule, and affect his independence and judgment. The motion for a new trial is denied, with costs, and an order may be entered accordingly.