**334** · NEW YORK PRACTICE REPORTS.

The People *ex rel.* Deuchler agt. Board of Canvassers of Wayne Co.

## SUPREME COURT.

THE PEOPLE *ex rel.* LOUIS DEUCHLER and another agt. THE BOARD OF COUNTY CANVASSERS OF WAYNE COUNTY.

*Election laws — Duties of boards of county canvassers — Power of supreme court by writ of mandamus to compel board to reconvene and correct error.*

Prior to the passage of the act of the legislature of 1880 (*chap.* 460), the court had not the power to compel a board of county canvassers to reconvene and reconsider their work. By that act, however, whenever it appears by affidavit that error has occurred, the court can reconvene them, and by writ of *mandamus* compel them to correct the error.

The power of the board of canvassers, which is derived only from the statute, which says: " The original statement of the canvass in each district shall then be produced, and from them the board shall proceed to estimate the votes of the county, and shall make such statement thereof as the nature of the election shall require ; such statements shall then be delivered to, and deposited with, the county clerk;" imposes upon them purely ministerial duties, and cannot be extended by them beyond a mere count of what appear on their face to be the original returns, and which are apparently regular.

Nothing is committed to the judgment or discretion of the board. Their duty is arithmetical merely. They are to cast up the votes appearing upon the returns of the district inspectors, which are produced before them. They are not authorized to institute any inquiries as to the authenticity of the returns, but are to take those produced before them, if they are regular on their face, and if they are not regular on their face, they must return them to the inspectors for correction.

Where it appeared that at the last general election in this state 629 electors residing in the third election district of the town of Lyons, voted for the various candidates and measures there offered to the people for their suffrages, the board of county canvassers, when in session for the purpose of estimating and determining the number of votes which had been cast in the county, by a bare majority vote, wholly rejected the returns made by the inspectors of the election district, and consequently these 629 voters were not recorded for or against any such measures or candidates:

*Held,* that a peremptory writ of *mandamus* should be issued requiring the board of county canvassers of Wayne county to reconvene and to receive the original statements or returns of the third election district of the town of Lyons, and to estimate, determine, certify and publish

the votes therein contained, and to correct their former determination thereon.

*Held*, further, that although in the operation of the election laws, there may be some essentials entering into the methods of taking and returning the votes by which the inspectors of election, who are in some sort the agents of the electors at large, may violate the statutes to the extent of working in a given case a practical rejection of honest votes, yet it is not the province of the board of county canvassers to adjudge it. They discharge their whole power and duty when, as accurate accountants, they return to the state canvassers the results of the apparently and ostensibly fair figures which may be presented to them.

*Wayne Special Term, December,* 1882.

*Charles H. Roys* and *Charles McLouth,* for relators.

*John H. Camp* and *Joseph Welling,* for respondents.

MACOMBER, *J.* — This is a hearing upon the return of an order to show cause granted on the fourth instant, why a peremptory writ of *mandamus* should not be issued requiring the board of county canvassers of Wayne county to reconvene and to receive the original statement or returns of the third election district of the town of Lyons, and to estimate, determine, certify and publish the votes therein contained, and to correct their former determination thereon.

It appears that at the last general election in this state 629 electors, residing in that district, voted for the various candidates and measures then offered to the people for their suffrages. The respondents, the board of county canvassers, when in session for the purpose of estimating and determining the number of votes which had been cast in the county, by a bare majority vote, wholly rejected the returns made by the inspectors of election of this election district, and consequently these 629 voters are not recorded for or against any such measures or candidates.

The inspectors of the election district were required by law to prepare an original certificate of the votes cast, and to deliver it to the supervisor of the town and to file a duplicate with the county clerk and a copy with the town clerk within

twenty-four hours of the close of the polls. It is established that they left with the county clerk what purported to be a duplicate or copy of the original at noon of the day following the election, but shortly afterwards borrowed it of the clerk ostensibly to affix the ballots thereon in their proper places; but it was returned at five o'clock in the afternoon of that day, with the ballots properly attached. It was then found that the certificate had been changed in respect to the number of votes cast for member of assembly, by which the whole number was raised from 615 to 623.

At the meeting of the county canvassers a week later, the supervisor presented the original returns as they had been delivered to him by the inspectors; but such original, when opened, also contained a like change in the vote for member of assembly. There is no evidence, however, that the change had been made by the inspectors or tampered with by anybody after its delivery to the supervisor, who was the proper custodian thereof. The board of county canvassers, acting mainly on affidavits that the duplicate or copy which had been filed with the clerk had been changed by the inspectors after filing, and observing that the original, as presented by the supervisor, contained a like change, threw out and rejected from the canvass the entire document. The court is now asked to interpose the greatest power which it possesses, and by its high prerogative writ of *mandamus*, compel the county canvassers to include these returns in the canvass and estimate of the votes of the county.

Prior to the passage of the act of the legislature of 1880, (*chap.* 460), the court had not the power to compel a board of county canvassers to reconvene and reconsider their work. By that act, however, whenever it appears by affidavit that errors have occurred, the court can reconvene them, and by writ of *mandamus* compel them to correct the error. It is a power, however, which ought to be exercised with the greatest caution, and exerted only in cases of palpable clerical errors, or of flagrant abuse of trust imposed in the canvassers.

The duties of the board of canvassers are clearly defined by statute, which says: " The original statement of the canvass in each district shall then be produced, and from them the board shall proceed to estimate the votes of the county, and shall make such statement thereof as the nature of the election shall require ; such statements shall then be delivered to, and deposited with, the county clerk."

The power of the canvassers being thus derived only from the statute, which imposes purely ministerial duties, cannot be extended by them beyond a mere count of what appear on their face to be the original returns and which are apparently regular.   Says the court in *Fells case* (11 *Abb. Pr. R.* [*N. S.*], 206) : " Nothing is committed to the judgment or discretion of the board.   Their duty is arithmetical merely.   They are to cast up the votes appearing upon the returns of the district inspectors, which are produced before them."   *   *   *
" They are not authorized to institute any inquiries as to the authenticity of the returns, but are to take those produced before them, if they are regular on the face, and if they are not regular on the face, they must return them to the inspectors for correction " (*See, also, People* agt. *Cook*, 8 *N. Y.*, 67 ; and *Bright Lead. Case on Elections*, 305).

But the learned counsel for the respondents urges that the board of canvassers, though bound by the original return, have the right to determine whether it is the original or a spurious return ; for otherwise, as they argue, great inconvenience and hardship might be wrought.   It is not necessary to inquire what might be done by the board to prevent spurious or forged returns being thrust upon them, for it is an event so remote in the multifarious appliances to secure honest returns, as not to present a subject for judicial speculation.   The primary object is to obtain the true returns made by the district inspectors.   If they falsify the vote, there is the remedy of the public by indictment and punishment. There also is the remedy of the defrauded candidate by an action at law in the nature of *quo warranto*, by which a false

title to the office may be challenged and restored to the rightful claimant. If it be a legislative office, there also is the remedy on the floor of the house, which is declared by the constitution to be the judge of the election returns and qualifications of its own members (*Const.*, *art.* 3, *sec.* 10). In the distribution of responsibility for a fair vote, a correct count and honest returns, in popular elections, a wise economy, alike by statute and judicial decision, has placed the initial obligation on the district inspectors who canvass and return the votes of the smallest political division of the voters, and where mistakes or frauds can affect the least number of citizens. If their returns can be overhauled by the county canvassers, or altogether rejected, as in this case, the minimum of evil, as is now secured, might, through partizanship, be greatly augmented. It seems to me, therefore, to permit the action of this board of county canvassers to stand, would be an invitation to party zeal, through one pretext and another, to make returns and not to count them. For, in this case, there is no forgery or tampering of the returns. Whatever the returns are, they were made by the inspectors themselves. They are responsible for them. There was nothing in the original papers presented by the supervisor which the board had any power to object to. The erasure and amendment were no more serious than the common experience and observation of men are wont to find in the returns of inspectors. The inspectors all testify that the papers handed in by the supervisor were the original returns. The affidavit in opposition, to the effect that a majority of the board of county canvassers did not consider them to be the original, is frivolous. This leads me to say that I reject from consideration all testimony except that which tends to establish or refute the allegation that there was actually before the board of county canvassers the original return of the inspectors.

The result of the action of the board of county canvassers is the disfranchisement of a considerable portion of the electors of the town of Lyons, without fault on their part,

The People *ex rel.* Deuchler agt. Board of Canvassers of Wayne Co.

and without fault on the part of the inspectors of election, in respect to a true tally of the votes actually cast. The constitution declares that no member of this state shall be disfranchised unless by the law of the land or the judgment of his peers (*Art.* 1, *sec.* 1).

Doubtless, in the operation of the election laws, there may be some essentials entering into the methods of taking and returning the votes by which the inspectors of election, who are in some sort the agents of the electors at large, may violate the statutes to the extent of working, in a given case, the practical rejection of honest votes, but it is not the province of the board of county canvassers to adjudge it. They discharge their whole power and duty when, as accurate accountants, they return to the state canvassers the results of the apparently and ostensibly fair figures which may be presented to them.

The counsel for the respondents urge, as a reason for the non-interposition of the court, that the result would be to give the certificate of election to the assembly to another than the one who now appears to be entitled to it, and that the determination of that matter ought to be left to the legislature. It is hardly necessary to say that such a consideration cannot affect the result of the case. It is a mere incident to the more important question, namely, that persons whose votes ought of right to be counted in the canvass of the state, will be disfranchised unless the court interposes.

Let the order to show cause be made absolute, and let the peremptory writ of *mandamus* be issued, requiring the board of county canvassers forthwith to reconvene and to estimate the votes of the Third district of the town of Lyons, in the words and figures contained in the schedule annexed to the moving papers, and as exhibited by the original return produced in court. Let the order further provide that the relators recover fifty dollars costs of their proceedings, besides disbursements.