## VOLUME XX. 19

People ex rel. Russell v. Canvassers of Albany County.

## PEOPLE ex rel. RUSSELL v. CANVASSERS OF ALBANY COUNTY.

### N. Y. Supreme Court, Third Department, General Term; December, 1887.

1. *Elections; duties of county canvassers; duplicate return.*] The duplicate return of the inspectors of election of an election district, required by L. 1880. c. 56, § 14, to be filed in county clerk's office, in the absence of an original return made by such inspectors at the close of the election, is the return which the board of county canvassers are required to canvass.

2. *The same; possession of county clerk; mandamus.*] Such duplicate being in the possession of the county clerk, who is *ex officio* secretary of the board of county canvassers, is practically in the possession of the board; and, in the absence of a *proper original*, produced by the supervisor, should be canvassed as the original, under its control. The board will be compelled to do so by mandamus.

3. *The same; second return.*] After the inspectors have, on the day of election, made two proper statements, and have separated, and have

---

In MAYOR, &c. OF N. Y. v. NOE. (*Supreme Court, First District, Special Term; March,* 1887), a demurrer to the complaint for insufficiency was overruled by Mr. Justice BEACH, no opinion being written.

The action was based on a judgment recovered by one Reich against the city of New York in an action for personal injuries from a fall caused by slipping on ice upon the sidewalk of a public street of the city; the evidence showing that snow had fallen two or three days before plaintiff was injured; that at the place where the accident occurred, water was discharged upon the sidewalk by a leader from the roof of a house owned or occupied by Noe, contrary to the city ordinances, and froze there ; and that ice had thus formed at that place, during the winter, and for several days prior to the accident.

The case of Reich v. Mayor, &c. of N. Y. is reported in 12 *Daly,* 72.

filed one in the county clerk's office, and one in the town clerk's office, a second return, six days thereafter, by two of the three inspectors, and signed and delivered to the supervisor, is not an original return, and the board of county canvassers will, after a reasonable and proper time to make a proper canvass of the duplicate in the county clerk's office, be restrained from acting upon or canvassing such second return.

Appeal from an order of the Albany special term restraining board of county canvassers from canvassing an election return, and refusing a mandamus to compel them to canvass another return.

The annual election, at which a state senator was to be elected for the seventeenth senatorial district, consisting of the county of Albany, was held on November 8, 1887. The three inspectors of election, of and for the eleventh election district, on the evening of the election made two returns of the result of the election, by which it appeared that Norton Chase, the Democratic candidate, received, in that district, 186 votes for senator, and that Henry Russell, the Republican candidate, received 282 votes for the same office. These returns would give Russell eight majority in the senatorial district. One of them was, on November 9, filed in the county clerk's office and one in the town clerk's office. No return was delivered to the supervisor. On November 14, two of the inspectors made and delivered to the supervisor another return, similar to those made the evening of the election, except that, by that, Chase was stated to have received 231 votes and Russell 237 votes. This return the supervisor delivered to the board of county canvassers. That board appointed a committee to whom the returns were referred. The committee acted upon the return of November 14, and placed its results in its tabulated statement of the votes for senator, but had not reported such statement to the board of county canvassers.

The relator moved at the Albany special term, last Tuesday of November, held by Mr. Justice Ingalls, for an

order restraining the board of county canvassers from canvassing the return of November 14, and for a mandamus requiring the board to canvass the return made November 8, and filed in the county clerk's office. The special term granted the first part of the relief asked for, but did not require the board to canvass the return of November 8, in the county clerk's office.

The county clerk, or, in his absence his deputy, is *ex officio* secretary of the board of county canvassers (*L.* 1842, c. 130, tit. 5, art. I, § 3; *L.* 1842, p. 124; 1 *Edm. St.* 133).

That law also requires (*L.* 1842, p. 123, tit. 4, art. 4, § 48) the inspectors of election of each election district to deliver the original statement or return or to cause it to be delivered to the supervisor of the town, and (§§ 6–10) directs the board of county canvassers, from the "original statements," to proceed and estimate the votes of the county, to make a statement thereof, and deliver the same to the county clerk. *L.* 1880, c. 56, § 14, provides: "The inspectors of election of each election district shall, within twenty-four hours after the completion of the canvass, in addition to the making and filing of the returns and statements thereof now directed and required by law, cause a duplicate of such return or statement to be filed in the office of the clerk of the county."

From the special term order this appeal was taken to the general term.

*Edwin Countryman* and *D. Cady Herrick*, for the board of county canvassers.

*Hamilton Harris* and *Edward J. Meegan*, for the relator.

LANDON, P. J.—The inspectors of election for the eleventh district of Watervliet did, at the close of the election, make and sign two original statements of the result of the election in that district, respecting the votes

cast for the office of senator. One of these statements they delivered to the town clerk and one to the county clerk to be filed. They ought to have delivered one of these original statements to the supervisor of the town, but they failed to do so. Six days thereafter, two of the inspectors made and signed what purported to be a copy of these original statements, but differing from them in that it was stated therein that Henry Russell received forty-five votes less and Norton Chase forty-five more for the office of senator than was certified and determined by the inspectors and set forth in the two original statements. This change of determination and statement was not within their power or jurisdiction to make, and was wholly invalid as an efficient and legal change of their first determination and statement. Beside, it was made under such circumstances and upon such representations to the two inspectors as were wholly insufficient to establish any error in their original determination and statement, if it had been competent for them to alter it. This paper these two inspectors caused to be delivered to the supervisor of the town. One of the original statements ought to have been delivered to him. A copy of the original statement ought to have been immediately filed in the town clerk's office.

The supervisor receiving this paper, in the absence of any evidence exciting his suspicion in regard to its regularity and genuineness, would naturally regard it as the original statement which the law requires to be delivered to him. He presented it to the board of county canvassers, and that body proceeded to take action upon it.

Some question is made as to the proof respecting the determination of that board to receive it as an original and genuine return. The affidavits submitted show that that body had laid it before a committee of their body charged with making a preliminary statement of the votes cast at the election, and that its statements were entered in a tabulated statement prepared by that committee for the final

adoption of the board as their determination of the result of the canvass. No evidence is submitted leading us to doubt that the board of canvassers were in the act of embodying its statements in the canvass about to be declared by them.

Indeed, as that body has only ministerial and not judicial duties to perform, it could not enter upon judicial investigation to ascertain the genuineness of a return which the law required one of that body to return to them. This paper was favored by the presumption of official honesty and regularity. A case was, therefore, presented in which it was proper to invoke the aid of the court, to the end that the true nature of this irregular paper might be judicially investigated and declared. An application was, therefore, made to the special term, under chapter 460, Laws of 1880, for a mandamus to compel the board of canvassers not to canvass the irregular returns. The affidavits there submitted showed the facts above stated, and no attempt was made to show that the irregular paper delivered to the supervisors was made otherwise than as above stated.

The special term, as we think, properly granted a mandamus directing the board of county convassers not to canvass the returns as stated in this irregular paper. Such an order, we think, was regularly granted upon a state of facts which fully justified and required it. The time had come when it was proper for the court to use its judicial functions to correct and direct the board as to the proper return or paper upon which the latter should exercise its ministerial functions. Counsel for the respective parties agree that the order of the special term is defective in not directing what return the board of county canvassers should canvass. Under these circumstances, there can be no doubt that the returns filed in the county clerk's office should be canvassed by the board. Chapter 460 of the Laws of 1880, provides that, in a proceeding like this, the court may compel the board to correct the

errors which it has committed. It has committed an error in using the irregular return for any purpose. The order of the special term should be affirmed, with the further direction that the board of county canvassers shall substitute the return filed in the county clerk's office for irregular returns aforesaid, and use the same in their further proceedings as the genuine return. The order to be presented to Justice LANDON for settlement.

FISH and A. B. PARKER, J J., concurred.

### NOTE ON POWER OF COURT OVER CANVASS OF VOTES.

The board of canvassers had the power, and it was its duty, to ascertain and determine what were the original returns, and whether they had been altered. *McCrary on Elections,* §§ 82, 554; Matter of Elections, 70 *Maine,* 560, 567, 568.

In a proceeding by mandamus to compel a board of canvassers to count a vote as returned by the officers of election, when it appears that an alteration has been made in the return of the vote, but the canvassers do not know whether it was made before or after the return was delivered to them by the officers of the election, the circuit court will inquire and determine what the return as delivered actually was, and will compel them to make the count accordingly. State *v.* Garesche, 65 *Mo.* 480.

At common law the duty of canvassers is purely ministerial. The court could by mandamus, compel them to act, but could not direct them how to act. People *v.* Canvassers, 12 *Abb. N. C.* 84; People *v.* Supervisors, 12 *Barb.* 217, 220; Hadley *v.* Albany, 33 *N. Y.* 603; Morgan *v.* Quackenbush, 22 *Barb.* 72, 77.

When they had acted, no matter how erroneously, the court could not compel them to, nor could they voluntarily, reconvene and correct an error or wrong, no matter how clear. Morgan *v.* Quackenbush, 22 *Barb.* 72, 77; Hadley *v.* Albany, 33 *N. Y.* 603. They cannot receive anything outside of the original returns themselves People *v.* Canvassers, 64 *How. Pr.* 334; Morgan *v.* Quackenbush, 22 *Barb.* 72, 77; People *v.* Canvassers, 12 *Abb. N. C.* 84.

By *L.* 1880, c. 460, p. 662, the right of courts, in New York, to control canvassers was extended by allowing the courts to compel canvassers to reconvene and declare a truthful result of the returns before them. People *v.* Canvassers, 64 *How. Pr.* 201; S. C., 2 *Civ. Pro. R. (Browne)* 452; People *v.* Canvassers, 64 *How. Pr,* 357; S. C.,

12 *Abb. N. C.* 77 ; People *v.* Canvassers, 64 *How. Pr.* 334 ; 12 *Abb. N. C.* 95, Id. 103, Id. 84.

The act of 1880, as its title declares, was designed to " extend," and not to abridge, the powers of courts. Cases had occurred where, before a mandamus or prohibition could be obtained, the canvassers illegally declared a candidate elected, returned that they had declared a result, and the courts were powerless to correct the grossest wrong. It was to meet such cases, and to provide in general for decent elections and returns thereof, that the election law of 1880 was passed. That law nowhere speaks of or refers to the class of cases where preventive remedies had been granted, but leaves them in full force. It is creative only of new rights, in the class of cases where a result has been illegally declared.

The principal case clearly declares the right of the court, by way of preventive justice, to control apparently contemplated illegal action by the board of canvassers. The general term of the supreme court, composed of Justices LEARNED, BOARDMAN, and BOOKES, held at the city hall, in the city of Albany, on November 17, 1876, in the case of People *ex rel.* Wemple *v.* Canvassers of Albany County, required the board to canvass a certain return of the vote for sheriff from the fifth ward of the city of Cohoes, or show cause why a peremptory mandamus should not issue requiring them to do so. The court also granted a writ of prohibition restraining them from adjourning, except from day to day, and from canvassing any except the designated return from that particular ward. Upon the suggestion being made that it was unusual for the general term to grant, or to spend its time in the hearing of such orders, the court remarked that courts of justice sat to uphold and enforce the law, and it knew of no better use of its time than to preserve, as far as possible, the purity of elections, and to enforce the law relative thereto. Cases like the principal case and that of the People *ex rel.* Wemple were left, by the act of 1880,untouched and still available. In fine, a new and speedy remedy was given in a class of cases where none before existed.