HALLORAN *v.* CARTER *et al.*

PEOPLE *ex rel.* HALLORAN *v.* COMMON COUNCIL OF CITY OF KINGSTON.

(*Supreme Court, General Term, Third Department.* February 4, 1891.)

1. CITY ELECTIONS—CANVASS BY INSPECTORS—CERTIFICATES.

The charter of the city of Kingston (Laws N. Y. 1872, c. 150, § 10) provides that, at the close of the polls of elections for city officers, the inspectors of election shall forthwith, without adjourning, canvass the votes received by them, and certify the result to the city clerk on the same day. At an election for alderman in the Fourth ward of said city, inspectors of election duly certified the result to the city clerk under said provision. Two days thereafter two of said inspectors prepared another certificate of said election, setting forth a different result, and filed the same with the city clerk. *Held,* that the second certificate was unauthorized and void, for want of compliance with the aforesaid provision.

2. SAME—CANVASS BY COMMON COUNCIL—INJUNCTION.

Section 11 of said charter provides that the common council shall convene on the Monday following such election, examine the certificate of the inspectors of election filed with the clerk, and forthwith determine, declare, and certify who were duly elected at said election. *Held,* that the duties of the common council under this provision are judicial, and not ministerial, and that an injunction will not lie to restrain them from inquiring into the validity of the election, and awarding their certificate of election to a person other than the one whose election has been certified by the inspectors of election in the first instance.

3. SAME—MANDAMUS.

Section 11 further provides that the mayor and aldermen elected at the said last election shall, at the close of the canvass by the old council, take their oaths of office, and the council of the preceding year shall thereupon be dissolved; and section 30 provides that "the common council shall * * * be the judge of the election and qualification of its own members." *Held,* that the duties of the new council, in determining the election of its members, are judicial, and not ministerial, and that *mandamus* will not lie to compel them to seat a person returned as alderman elect by the inspectors of election.

Appeals from special term, Ulster county.

Two appeals,—in the first case, from an order of injunction granted by the special term forbidding the defendant Carter from taking his seat as a member of the common council of the city of Kingston, and forbidding the common council from taking any action for that purpose or recognizing him; in the second case, from an order awarding a writ of peremptory *mandamus* commanding the common council to declare the plaintiff and relator, Daniel Halloran, elected alderman, and to recognize him as a member of said common council. In the first case, no affidavits were read by the defendants; in the second case, the relator's election is challenged. The defendant Carter does not appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*G. D. B. Hasbrouck,* for appellant. *John F. Cloonan,* for respondent.

LANDON, J. At the charter election held in and for the city of Kingston on the 4th of March, 1890, Daniel Halloran and Enoch Carter were competing candidates in the Fourth ward for election to the office of alderman. That ward constituted one election district. The charter (chapter 150, Laws 1872, § 10) provides that the polls of the election shall close at 5 o'clock in the after-

noon, and then "the inspectors shall forthwith, without adjourning, canvass the votes received by them, and certify and declare the result, stating the number of votes given for each person for each office, and shall file such statement or certificate on the same day, or the next, with the city clerk." At the close of the polls, and without adjourning, the inspectors, three in number, did canvass the votes, and make and sign a statement and certificate that "the whole number of votes cast for the office of alderman was four hundred and ninety-nine, of which David Halloran received two hundred and forty-seven, (247,) of which Enoch Carter received two hundred and forty-five,·(245,) and seven scattered, (7.)" The inspectors filed this statement with the city clerk the next day. This statement is consistent in its details, and is complete upon its face, except as to the persons for whom the scattering votes were cast. On the 6th day of March, two of the inspectors made and filed with the city clerk a paper purporting to be a statement and certificate of their canvass of the votes given at such election for candidates for the office of alderman for the Fourth ward. This paper recited that the whole number of votes cast was 499, of which said Carter received 247; Halloran, 246; defective, 2; blank, 4. The certificate made the evening after the polls closed was the legal return. The paper made and filed two days later was a legal nullity, for the plain reason that the certificate was authorized and required by the statute, and the paper was not. The paper, moreover, was an unofficial voluntary impeachment of an official act, and worthless for want of power in its signers. *Hadley* v. *Mayor*, 33 N. Y. 603. But the certificate was not of itself the final statutory evidence of Halloran's election. The charter (section 11) provides that "on the Monday next following the election for city officers, the common council of the preceding year shall convene at ten o'clock in the forenoon, at their usual place of meeting, and the statement of votes filed with the city clerk by the inspectors of election shall be produced by the clerk. The common council shall then forthwith determine, declare, and certify who were duly elected at said election to the various offices hereinbefore named, * * * which certificate shall be filed with the city clerk." This determination and certificate are requisite to the completion of the legal title of the elect to the office itself. *People* v. *North*, 72 N. Y. 124. That the common council intended to seat Carter is stated upon information and belief in the first case. That case cannot be weakened by borrowing from the second case the evidence establishing that intent. The common council of the preceding year did convene at the time and place required, and the clerk laid before them both certificate and paper. It will be observed that the eleventh section of the charter above quoted does not in express terms provide that the common council shall make their determination upon the returns filed and laid before them, as in the case cited, but we have no doubt such is its real meaning; otherwise the common council would have no fixed rule of procedure. The common council must act upon the returns made and filed in pursuance of the statute, and not upon unauthorized papers attempted to be substituted in their place. The common council appointed a committee of their body to canvass the returns and report. It appears that this committee accepted the paper and rejected the certificate, and was about to report in favor of the election of Carter, when the injunction order now under review was served upon the common council. It enjoined Carter from taking a seat as alderman, and the common council from seating him, or recognizing him as a member of that body, and from taking any action to that end. The injunction went to the title of the office, and not to the record or procedure whereby the title was to be determined and certified. It in effect substituted the judgment of the court in place of the result which the statute intended should be developed and determined by a completion of the canvass. Doubtless the court could, in the exercise of preventive justice, if timely invoked, have enjoined the common council in their capacity as canvassers from acting upon the inspectors' paper,

and have required them to act upon the inspectors' returns.  As canvassers, this common council were ministerial officers; that is, the instruments to do and perform the bidding of the statute, without obstructing that bidding by any opposing inclination of their own.  *Felt's Case*, 11 Abb. Pr. (N. S.) 203; *People* v. *Canvassers*, 64 How. Pr. 334.  As said in *People* v. *Cook*, 8 N. Y. 81, the strictness with which these boards should be held to the record before them is dictated by sound policy and enlightened wisdom.  The violation of duty cannot be the equivalent of performance of it.  But the court in issuing its mandates must recall these officers to the discharge of omitted duties, instead of disabling them from their performance.  Here the injunction did not confine the canvassers to their duty, but suspended them in the performance of it.  The injunction order therefore must be reversed.

As to the *mandamus*.  This was issued after the common council which acted as a board of canvassers was dissolved, and the new common council was organized.  Notwithstanding the injunction order, the old common council adopted a resolution declaring Carter elected, but no certificate of the election was ever made.  The charter of the city prescribes (section 11) that, upon finishing the canvass and certifying its result, "the mayor, and such aldermen as shall have been elected at the said last election, shall thereupon take the oath of office, * * * and the common council of the preceding year shall thereupon be dissolved," and the new common council organized. The old common council was dissolved on the Monday in question, and the new one organized.  The new common council does not appear by the charter to be authorized to resume as canvassers the unfinished canvass of the old.  That is rendered unnecessary by section 30, which provides that "the common council shall * * * be judge of the election and qualification of its own members."  The new common council, instead of being, with respect to its own members, mere ministerial officers, become judges of their election.  They are the judges of this disputed election.  *People* v. *Hall*, 80 N. Y. 117.  The order awarding a *mandamus* required the common council to declare Halloran duly elected, and to recognize him as a member of their body.  This was a mandate directing which way they should pronounce judgment.  *Mandamus* does not thus dictate to officers acting judicially.  *People* v. *Common Council*, 78 N. Y. 33; *People* v. *Chapin*, 104 N. Y. 96, 10 N. E. Rep. 141. If Halloran had the certificate of election, the common council could notwithstanding inquire into the election, and ascertain which candidate had actually received the highest number of votes.  The opposing affidavits raise the question.  As Halloran does not hold the certificate, as his title is disputed, as it is yet open to determination by the common council, the order must also fail, because he lacks that clear legal right which is an essential prerequisite to the peremptory writ.  Without passing upon the other questions presented, we conclude, upon the grounds stated, to reverse both orders.  Injunction order reversed, with $10 costs and disbursements, and motion denied, with $10 costs.  Order awarding peremptory writ of *mandamus* reversed, with $50 costs and disbursements, and motion denied, with $10 costs.  All concur.