(75 App. Div. 110.)

PEOPLE ex rel. KATHAN v. BOARD OF CANVASSERS OF HAMILTON COUNTY et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. APPEAL—NOTICE—SUFFICIENCY.
    Where a notice of an appeal from an order bringing in a third person as a party so describes the order, it is sufficient, though the date of the order is incorrectly stated.

2. PARTIES—BRINGING IN NEW PARTIES—WAIVER OF OBJECTIONS.
    Where an order bringing in a third person as a party is made at the request of such person, and he does not afterwards object that he is not a proper party, he cannot complain of the order on appeal.

3. MANDAMUS—COMPELLING BOARD OF ELECTION CANVASSERS TO RECONVENE.
    The board of election canvassers, which, under Laws 1896, c. 909, may be reconvened after it has made its determination and dissolved, may be compelled by mandamus to reconvene after adjournment and recanvass the vote.

4. ELECTIONS—COUNTING BALLOTS.
    The board of election canvassers, required by Election Laws, §§ 135, 136, to make a statement of all the votes cast for each county office, and determine the person elected, cannot count votes cast for Nat Locke, J. N. Locke, and Nathaniel Locke as being cast for James N. Locke, in an election where no person by the name of Locke has been regularly nominated.

5. SAME—EVIDENCE.
    The board could not consider affidavits showing that the votes were intended for James N. Locke.

6. SAME—MANDAMUS PROCEEDING.
    Such affidavits were not admissible in a mandamus proceeding to compel the election canvassers to certify the votes received by each candidate.

7. SAME—TRYING TITLE TO OFFICE.
    Title to office cannot be tried in a mandamus proceeding to compel the board of canvassers to reconvene and certify the votes received by each candidate.

Appeal from special term, Hamilton county.

Mandamus by the people, on relation of B. Frank Kathan, against the board of canvassers of Hamilton county and others. From an order making James N. Locke a party, and directing the issuance of writs of mandamus, defendant Locke brings separate appeals. Ap-

¶ 7. See Mandamus, vol. 33, Cent. Dig. § 383.

peal from order making Locke a party dismissed, and other orders affirmed.

In 1901 the respondent, B. Frank Kathan, was nominated for the office of sheriff by the Republican party in the county of Hamilton. No other nomination was made. After the election, upon the canvass of the votes it was found that Kathan had received 286 votes for the office. Nat Locke had received 222; Nate Lock, 8; James N. Locke, 24; N. Locke, 4; Nathan Lock, 2; J. N. Locke, 32; Nathaniel Locke, 16. If all of these votes were deemed cast for James N. Locke, he would have received 308 votes, and have been elected. Two were cast for H. N. Locke and one for N. J. Locke, and in column marked "No nomination" 15 ballots had the name of Nat Locke for sheriff. These votes, added to the 308 votes, made 326 votes. The board of canvassers certified that B. Frank Kathan had received 288 votes for the office of sheriff, and that James N. Locke had received 326 votes, and was elected to said office. The said board then adjourned. Thereafter this respondent made a motion for a peremptory writ of mandamus to compel the canvassers to reconvene and recanvass said votes, to show the names for which ballots were cast, and the number cast for each of said names. Upon a hearing of that motion this appellant appeared specially, and made objection that he was not, and should be, a party to this proceeding. Thereupon the court, upon its own motion, made an order bringing him in as a party, which is the first order here appealed from. After appellant was made a party, the matter came before the special term, which granted the writ asked for, and directed the canvassers to reconvene and state the specific names voted for, and the number of ballots cast for each name. This is the second order here appealed from. Pursuant to this writ the canvassers did meet, and set forth in their report the matter requested to be set forth, and further assumed to determine and certify that James N. Locke had received 326 votes; being the person intended by those votes cast for the various names heretofore set forth. Thereupon an order was granted directing the issuance of a second writ, which is here called an "alias writ," commanding the board to certify that B. Frank Kathan had received the greater number of votes for sheriff, and to certify to his election. This order is the third order from which the appeal is here taken.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

M. D. Murray (Andrew J. Nellis, of counsel), for appellant.

James R. Van Ness, for respondent.

SMITH, J. In the appeal from the order of Justice Houghton bringing in the appellant as a party to this proceeding, it is first objected that the notice of appeal does not sufficiently identify the order. While the date of the order is incorrectly stated in the notice of appeal, the notice of appeal specifies the order appealed from as the order bringing in the appellant as a party. This description sufficiently identifies the order. The order was made, however, upon the objection of the appellant that he was "not, and should be," a party to the proceeding, and in the subsequent proceedings no objection was made by him that he was not properly there. Of an order made under such circumstances we think the appellant has no cause of complaint, and that his appeal should be dismissed.

The appellant objects to the granting of the writ of mandamus, upon the ground that the board had completed its work and adjourned. While this objection might have been good under the old law, specific provision has been made for such an emergency by section 133 of the election law (chapter 909, Laws 1896). In that sec-

tion it is specifically provided that, if the board of canvassers shall have made its determination and dissolved, such board might be reconvened for the purpose of making any proper correction or performing any other duty. If, then, this board of canvassers had improperly canvassed the votes or had made an improper certificate, these writs were properly ordered.

Were these writs, then, justified upon the merits? By section 135 of the election law the board of canvassers were required, upon the completion of the canvass, to make a statement "as to all the votes cast for each county office." Section 136 provides:

"Upon the completion of the statements required by section 135 of this act, the board of canvassers of each county shall determine * * * each person elected by the greatest number of votes, to each county office of such county to be filled at such election. * * *"

These sections have been the subject of judicial construction. In Kortz v. Board, 12 Abb. N. C. 85, it was held that:

"A board of county canvassers has no power to determine that votes cast for and returned to one name (e. g., Andrew C. Getty) were intended to and should be counted and allowed to a person bearing another name (Andrew H. Getty). It has no power to take proof as to such facts, nor to make such determination in its absence. Upon an application for a mandamus under the Laws of 1880, c. 460, authorizing the writ to correct errors in the determination of the board of county canvassers, the court has no greater power than the board itself, and must direct a canvass of the vote as cast, even though it appear by affidavits that the votes were all intended for one person."

The act referred to has been substantially re-enacted in the election laws. In People v. Ferguson, 8 Cow. 102, in an action of quo warranto, "on an issue to try whether one was elected county clerk, whose name at length was Henry F. Yates, held, that votes for H. F. Yates were allowable, if, under all the circumstances, the jury should believe that they were intended by the voters for Henry F. Yates." In that case the opinion quotes the statute, which reads, "which ballot shall be a paper ticket containing the name of a person for clerk of said county." At page 106 the opinion reads:

"A name I understand to be a discriminative appellation or designation of an individual. This is so understood universally, and the state canvassers, in the rules adopted by them, to which the learned judge at the trial referred, so understand it. They admit the letters 'Geo.' to represent George. Why? Because by common consent they are admitted to represent that word. So they receive 'Hen.' for Henry, not because the man's name is Hen., but because Hen. is universally admitted to represent Henry. The state canvassers, then, do not confine themselves to names written or printed at full length, but they take abbreviations. Why do they receive abbreviations, when the act says the ballot shall contain the name? The answer must be because the abbreviation is evidence of the intent of the voter. The intent of the voter is to be ascertained by the canvassers, not by examining witnesses or testimony of any description, except that which is inherent in the ballot itself. From this the canvassers adjudge that the abbreviation represents the word, which word represents the name of the person voted for."

In People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451, it was held that the board of state canvassers act in the main ministerially in making their certificate; "they cannot be charged with error in refusing to add to the votes for Benjamin Welch, Jr., those which were given

for Benjamin C. Welch, Jr., and for Benjamin Welch. Their judicial power extends no further than to take notice of such matters of public notoriety, as that certain well-known abbreviations are generally used to designate particular names, and the like. They cannot hear evidence beyond the return to show the intention of the voters." This was an action of quo warranto, and it was there held that in that action the supreme court had power to go behind the certificate of the canvassers to ascertain the intention of voters in depositing their ballots. In People v. Rice, 129 N. Y. 461, 29 N. E. 358, it is held that:

"The office of a board of state canvassers is purely ministerial. No judicial powers are vested in them. They are simply authorized to compute the votes cast throughout the state, and determine, upon statements made up from the returns of the boards of county canvassers, what persons have received the greatest number of votes, and upon the statements so made they must declare those persons to be duly elected. No other evidence may be received or used, and no declaration may be made by such a board, except as based upon a determination arrived at by the statements made up by it in an arithmetical manner from the various official returns before them."

The opinion, in part, reads:

"The plain reading of the words of the law must be followed, and that inevitably forbids us to entertain an opinion that any judicial powers are vested in the board of canvassers. The members convene, under the statute, to determine, upon the statements, which they must make from the statements returned by the boards of county canvassers, what persons have been by the greatest number of votes elected to office. They are not, in any general sense, to determine. They must determine upon such statement as they have made up in an arithmetical manner from the various official returns before them. It is upon such statements, so made, that they must declare what persons have been duly elected. That is the evidence, and all of it, which the statute permits in connection with the election, and a declaration by the board of canvassers of its results. No declaration can be made, except as based upon a determination reached upon that particular evidence." And further: "To imply the possession of a power to determine otherwise than upon the evidence, which the statute provides for; to invest this board, so manifestly created for the fulfillment of a mere ministerial function, with any judicial powers,—would be counter to the plain terms of the statute."

The cases last cited define the nature of the determination which is made by the state canvassers. In the statute, however, the same power of determination seems to be given both to the county and to the state canvassers; and that power has been held as ministerial, only, and not judicial, and a power to determine only from the evidence apparent from the ballot itself.

Within the rules stated by these authorities, we find no justification for the action of the county canvassers. It can hardly be claimed that "Nat. Locke" is an abbreviation for James N. Locke, or that "James N. Locke" is an abbreviation for Nat. Locke. There is nothing upon the ballots, and no evidence before the board, which can reach the dignity of any proof that those ballots were cast for the same person. There had been no nomination of any one by the name of Locke. These canvassers had no knowledge, as far as the records show, that there was such a man in existence as James Nathaniel Locke. When, therefore, the board of canvassers as-

sumed to determine that the various ballots cast for James N. Locke, Nat. Locke, J. N. Locke, and Nathaniel Locke were all cast for James N. Locke, they clearly exceeded their power; and the court properly ordered them to certify separately the several names voted for, and the ballots cast for each. Upon the face of the return, B. Frank Kathan had received a majority of the votes, and was entitled to the certificate of election from the board of canvassers.

It is true that by the affidavits it appears that there was only one man by the name of Locke who could have been intended, and that he was known by these different appellations; but neither the board of canvassers, nor the court upon this application, has any right to receive that evidence. The title of office cannot be tried in this proceeding. The power and duty of the court is to compel the board of canvassers to make the report directed by statute, and the ultimate rights of the parties can only be determined by an action in which the title to the office can be fully tried. The orders directing the two writs of mandamus were therefore properly made, and should be affirmed.

Appeal from order directing appellant to be made a party to this proceeding dismissed, with $10 costs. Orders directing peremptory writs of mandamus affirmed, with $10 costs and disbursements upon one appeal. All concur.